# Exhibit A

| DISTRICT COURT, CITY & COUNTY OF BROOMFIELD, COLORADO<br>17 Descombes Drive<br>Broomfield, CO 80020<br>720-887-2100 | |
|---|---|
| Plaintiff: CRC CONSTRUCTION CONSULTING, LLC, an Oklahoma limited liability company<br><br>v.<br><br>Defendants: THE LAW COMPANY, INC., a Kansas corporation; DEN ALF 1, LLC, a Kansas limited liability company; LEGEND SENIOR PROPERTIES, LLC, a Kansas limited liability company; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation; CROSSFIRST BANK, a Kansas corporation | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiff CRC Construction Consulting, LLC*<br>Jerome M. Joseph, Reg. #15077 (jjoseph@allen-curry.com)<br>Vincent J. Wegher, Reg. #34533 (vwegher@allen-curry.com)<br>Allen & Curry, P.C.<br>1125 Seventeenth Street, Suite 1275<br>Denver, CO 80202<br>Tel: 303-955-6185 | Case No.: 2018 CV 30242<br><br>Division: B |

## DISTRICT COURT CIVIL SUMMONS

**TO THE ABOVE-NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

Dated this 10th day of August, 2018.

*This document was E-filed via the Colorado Court E-Filing System. The originally signed copy is on file at the offices of Allen & Curry, P.C.*

ALLEN & CURRY, P.C.

By: /s/ Jerome M. Joseph

Jerome M. Joseph
Vincent J. Wegher

Attorneys for CRC Construction Consulting, LLC

## **RETURN OF SERVICE**

STATE OF COLORADO                )
                                 ) ss.
COUNTY OF                        )

      I declare under oath that I served this Subpoena to Produce Documents upon

_____ in

_____ County, on _____ (date), at _____ (time),

at the following location: _____

_____.

     ☐     by handing it to a person identified to me as _____.

     ☐     by leaving it with _____ who refused service.

     ☐     I am over the age of 18 years and am not interested in nor a party to this case.

     ☐     I attempted to serve the witness on _____ occasions but have not
been able to locate the witness.  Return to the defendants is made on
_____.

                                 _____

                                 Private Process Server

                                 Sheriff, _____ County

                                 Fee \$_____

                                 Mileage \$_____

Subscribed and sworn before me on this _____ day of _____,

by _____.

     [SEAL]                   _____

                                 Notary Public

                                 My commission expires: _____

| DISTRICT COURT, CITY & COUNTY OF BROOMFIELD, COLORADO<br>17 Descombes Drive<br>Broomfield, CO 80020<br>720-887-2100 | |
|---|---|
| Plaintiff: CRC CONSTRUCTION CONSULTING, LLC, an Oklahoma limited liability company<br><br>v.<br><br>Defendants: THE LAW COMPANY, INC., a Kansas corporation; DEN ALF 1, LLC, a Kansas limited liability company; LEGEND SENIOR PROPERTIES, LLC, a Kansas limited liability company; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation; CROSSFIRST BANK, a Kansas corporation | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiff CRC Construction Consulting, LLC*<br>Jerome M. Joseph, Reg. #15077 (jjoseph@allen-curry.com)<br>Vincent J. Wegher, Reg. #34533 (vwegher@allen-curry.com)<br>Allen & Curry, P.C.<br>1125 Seventeenth Street, Suite 1275<br>Denver, CO 80202<br>Tel: 303-955-6185 | Case No.: 2018 CV<br><br>Division: |
| **DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT** | |

    1.    This cover sheet shall be filed with each pleading containing an initial claim for relief in every district court civil (CV) case, and shall be served on all parties along with the pleading. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

    2.    Check one of the following:

☐    This case is governed by C.R.C.P. 16.1 because:

-    The case is not a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding; AND

- A monetary judgment over $100,000 is not sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

■ This case is not governed by C.R.C.P. 16.1 because (check ALL boxes that apply):

    □ The case is a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding.

    ■ A monetary judgment over $100,000 is sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

    □ Another party has previously indicated in a Case Cover Sheet that the simplified procedure under C.R.C.P. 16.1 does not apply to the case.

*NOTE: In any case to which C.R.C.P. 16.1 does not apply, the parties may elect to use the simplified procedure by separately filing a Stipulation to be governed by the rule within 49 days of the at-issue date. See C.R.C.P. 16.1(e). In any case to which C.R.C.P. 16.1 applies, the parties may opt out of the rule by separately filing a Notice to Elect Exclusion (JDF 602) within 35 days of the at-issue date. See C.R.C.P. 16.1(d).*

    □ A Stipulation or Notice with respect to C.R.C.P. 16.1 has been separately filed with the Court, indicating:

    □ C.R.C.P. 16.1 applies to this case.

    □ C.R.C.P. 16.1 does not apply to this case.

3.    ■ This party makes a Jury Demand at this time and pays the requisite fee. *See* C.R.C.P. 38. (Checking this box is optional.)

Dated this 10th day of August, 2018.

*This document was E-filed via the Colorado Court E-Filing System. The originally signed copy is on file at the offices of Allen & Curry, P.C.*

ALLEN & CURRY, P.C.


By: /s/ Jerome M. Joseph
      Jerome M. Joseph
      Vincent J. Wegher

Attorneys for CRC Construction Consulting, LLC

| | |
|---|---|
| DISTRICT COURT, CITY & COUNTY OF BROOMFIELD, COLORADO<br>17 Descombes Drive<br>Broomfield, CO 80020<br>720-887-2100 | |
| Plaintiff: CRC CONSTRUCTION CONSULTING, LLC, an Oklahoma limited liability company<br><br>v.<br><br>Defendants: THE LAW COMPANY, INC., a Kansas corporation; DEN ALF 1, LLC, a Kansas limited liability company; LEGEND SENIOR PROPERTIES, LLC, a Kansas limited liability company; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation; CROSSFIRST BANK, a Kansas corporation | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiff CRC Construction Consulting, LLC*<br>Jerome M. Joseph, Reg. #15077 (jjoseph@allen-curry.com)<br>Vincent J. Wegher, Reg. #34533 (vwegher@allen-curry.com)<br>Allen & Curry, P.C.<br>1125 Seventeenth Street, Suite 1275<br>Denver, CO 80202<br>Tel: 303-955-6185 | Case No.: 2018 CV<br><br>Division: |

## COMPLAINT AND JURY DEMAND

Plaintiff CRC Construction Consulting, LLC ("CRC"), by and through counsel, Allen & Curry, P.C., for its Complaint against Defendants The Law Company, Inc., DEN ALF 1, LLC, Legend Senior Properties, LLC, Travelers Casualty and Surety Company of America, and CrossFirst Bank, alleges as follows:

## GENERAL ALLEGATIONS

1.     CRC is an Oklahoma limited liability company with its principal place of business in Oklahoma City, Oklahoma.

2.     Defendant Law Construction Group, Inc. ("Law") is a Kansas corporation with its principal place of business in Wichita, Kansas.

3.     Defendant DEN ALF 1, LLC ("DEN ALF") is a Kansas limited liability company with its principal place of business in Wichita, Kansas.

4.     Defendant Legend Senior Properties, LLC ("Legend") is a Kansas limited liability company with its principal place of business in Wichita, Kansas.

5.     Defendant Travelers Casualty Insurance Company ("Travelers") is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

6.     Defendant CrossFirst Bank ("Bank") is a Kansas corporation with its principal place of business in Leawood or Wichita, Kansas.

7.     Defendant DEN ALF owns the real property at 12600-12640 Lowell Blvd. in the City and County of Broomfield, Colorado, which is the subject of this action (the "Property").

8.     CRC, Law, DEN ALF and Legend were involved in the construction of the Legend at Broomfield, 12600-12640 Lowell Blvd., Broomfield, Colorado ("Project").

9.     Law retained CRC as a subcontractor for the Project.

10.     Law and CRC entered into a written subcontract (the "Contract") whereby CRC agreed to provide labor, supplies, goods, and materials for the construction of improvements at the Project.

11.     A copy of the Contract is attached as **Exhibit A**.

12.     CRC performed said labor and furnished said supplies, goods, and materials as agreed and without defects.

13.     The work performed by CRC on the Project benefitted Law, DEN ALF and Legend.

14.     Law has failed to pay CRC, and Law now owes CRC the principal sum of $733,727.00, plus the other sums identified below.

15.     Venue is proper in this Court as the Property and Project are located in the City and County of Broomfield, Colorado.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract against Law)

16.     The allegations in all other paragraphs are incorporated as if fully set forth herein.

17.     CRC performed said labor and furnished said goods, and materials as required by the Contract.

18.     Law has failed to pay CRC the principal sum of $733,727.00, which is owed to CRC.

19.     Demand has been made upon Law for the payment of the sums due, but Law has failed, neglected, and refused to pay the same.

20.     On June 5, 2018, in writing, even Law acknowledged: "Accounting for retainage of $187,174.79 on the Subcontract amount, the balance left on the Subcontract is $104,021.66."

21.     Law has breached its Contract with CRC, causing CRC to suffer damages.

WHEREFORE, CRC prays for the entry of a monetary judgment in its favor and against Law for the principal sum of $733,727.00 plus additional amounts, to be proven at trial, interest, legal fees, costs, and such other and further relief as the Court deems proper.

## SECOND CLAIM FOR RELIEF
### (Claim on Release of Lien Bond – Law and Travelers)

22.     The allegations in all other paragraphs are incorporated as if fully set forth herein.

23.     DEN ALF is the owner or alleged owner of the Property situated in the City and County of Broomfield, State of Colorado, to wit:

> PARCEL A:
> Lot 1, Mountain Terrace Filing No. 1 Final Plat - Replat A recorded August 29, 2014 at Reception No. 2014008265, City & County of Broomfield, State of Colorado

> PARCEL B:
> Non-exclusive easement for vehicular and pedestrian ingress and egress, utilities, as contained in Declaration of Access and Utility Easement and Maintenance Agreement recorded August 18, 2014 at Reception No. 2014007707, City & County of Broomfield, State of Colorado.

24.     CRC furnished materials and labor of the reasonable value of $733,727.00 in the construction of said improvements at the Property.

25.     All of the said Property is necessary for the convenient use and occupation of the improvements for which said labor and materials were furnished.

26.     CRC was working on the Project in April 2018.

27.     In June 2018, CRC served a Notice of Intent to File a Lien Statement upon Law and DEN ALF.

28.     On July 6, 2018, CRC recorded a Lien Statement in the Public Records of the City and County of Broomfield, Colorado ("Lien Statement"). A copy of the recorded Lien Statement, upon which this claim is based, is attached hereto as **Exhibit B**.

3

29.     CRC recorded its Lien Statement within four months after the day on which it provided its last labor or materials for the Project.

30.     Law substantially completed its work on the Project after March 31, 2018.

31.     There is now due to CRC the sum of $699,294.00 on its lien for said materials, supplies, and labor, plus legal fees, interest and costs.

32.     On July 26, 2018, in Case No. 2018CV30212, at the request of Law, this Court approved a Bond to Release Mechanic's Lien No. 106856399 ("Bond") issued by Travelers, as surety, naming Law, as principal.

33.     A copy of the Bond is attached as **Exhibit C**.

34.     Law sought approval of the Bond pursuant to C.R.S. § 38-22-131.

35.     Under the Court's Order of July 26, 2018, in Case No. 2018CV30212, the Bond is substituted for the Property in regard to CRC's lien claim.

36.     Under the Bond, Law and Travelers are bound for up to $1,049,1100.00, plus legal fees, costs and expenses, should CRC prove it had a valid mechanic's lien.

37.     The obligations of Law and Travelers under the Bond remain in effect until Law and Travelers pay the amount CRC is adjudged to be entitled to recover upon the claim upon which the lien is based, together with any interest, costs, legal fees, and other sums which CRC is entitled to recover.

38.     CRC had a valid mechanic's lien upon said Property and upon the improvements thereon.

39.     CRC is entitled to recover against Law and Travelers under the Bond.

40.     Traveler has failed to acknowledge the undisputed amount owing to CRC.

41.     C.R.S. § 38-22-101(5) provides that in the absence of a contractual provision setting an interest rate for unpaid monies owed to a supplier of labor or materials, the statutory rate of twelve percent per annum shall apply.

42.     Since the Contract does not provide an interest rate for monies owed to CRC, CRC is entitled to receive interest at a rate of twelve percent per annum on the unpaid principal sum of $699,294.00.

WHEREFORE, CRC prays for entry of a judgment in its favor and against Law, Travelers and the Bond as follows:

a.    That the Court decree that CRC had a valid mechanic's lien upon the Property;

b.    That judgment enter against Law, Travelers, and the Bond for the principal sum of $699,294.00;

c.    For legal fees, costs and expenses;

d.    For an award of interest at a rate of twelve percent per annum; and

e.    For such other and further relief as the Court deems proper.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment against Law, DEN ALF and Legend)

43.    The allegations in all other paragraphs are incorporated as if fully set forth herein.

44.    Defendants Law, DEN ALF and Legend benefited from the work furnished by CRC by the incorporation of such work into the construction of improvements on the Property.

45.    The reasonable value of the work furnished by CRC at the Property for which it has not been paid is $733,727.00.

46.    The benefit of such work furnished by CRC has been appreciated and retained by Defendants Law, DEN ALF and Legend.

47.    Despite CRC serving the notices and making demands for payment, Defendants Law, DEN ALF and Legend have failed and refused to pay CRC the reasonable value of the labor, materials, supplies, and goods remaining unpaid and due and owing to CRC.

48.    Law and DEN ALF have disputes between them over how much DEN ALF owes Law for the work on the Project.

49.    Law and DEN ALF have disputes between them over Law's compliance with Law's contract schedule for the Project.

50.    Law and DEN ALF have other disputes between them over Law's performance on the Project.

51.    Other subcontractors of Law have recorded mechanic's liens against the Property.

52.    Law has wrongfully attempted to extract funds from CRC to cover Law's other potential losses on the Project arising from disputes with DEN ALF.

53.     It would be inequitable for Defendants Law, DEN ALF and Legend to retain the benefit of work furnished by CRC without payment of its reasonable value.

WHEREFORE, CRC prays for entry of a judgment in its favor and against Law, DEN ALF and Legend for the reasonable value of the work furnished of $733,727.00, as set forth herein, plus, interest, costs, and such other and further relief as the Court deems proper.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Implied Contract/Quantum Meruit/Labor and Materials Received**
**against Law, DEN ALF and Legend)**

54.     The allegations in all other paragraphs are incorporated as if fully set forth herein.

55.     CRC, at the instance and request of Law, DEN ALF and Legend, and for the benefit of Law, DEN ALF and Legend, furnished and provided construction services, labor, materials, supplies, and goods for incorporation into the improvements being constructed on the Property.

56.     CRC provided services, labor, materials, supplies, and goods with the reasonable expectation that it would be paid the reasonable value of said services, labor, materials, supplies, and goods.

57.     Law, DEN ALF and Legend accepted said services, labor, materials, supplies, and goods under circumstances disclosing that they knew or should have known that CRC expected to be paid for said construction services, labor, materials, supplies, and goods.

58.     The reasonable value of said services, labor, materials, supplies, and goods remaining due and owing to CRC is $733,727.00.

59.     Law, DEN ALF and Legend have failed or refused to pay the reasonable value of said services, labor, materials, supplies, and goods even though demands have been made for such payment, and CRC has been damaged in the sum of $733,727.00, together with interest thereon, and costs of prosecution of this action.

60.     In addition to other rights, CRC claims rights in implied contract and quantum meruit for labor, materials, supplies, and goods received against Law, DEN ALF and Legend.

WHEREFORE, CRC prays for a judgment against Law, DEN ALF and Legend for an amount to be proven at trial which is no less than $733,727.00, legal fees, expenses, costs, interest, and such other relief as the Court deems proper.

**FIFTH CLAIM FOR RELIEF**
**(Faulty Plans, Drawings, Specifications against DEN ALF and Legend)**

61.     The allegations in all other paragraphs are incorporated as if fully set forth herein.

6

62.    DEN ALF, as owner of the Project, or successor to the position of a prior owner of the Project, had a duty to provide adequate plans, drawings and specifications.

63.    Legend acted on behalf of DEN ALF, in procuring, managing and disseminating the plans, drawings and specifications for the Project so that construction could occur.

64.    For all purposes related to construction of the Project, DEN ALF and Legend acted together and jointly.

65.    For all purposes related to construction of the Project, the acts of Legend were the acts of DEN ALF.

66.    Portions of the plans, drawings and specifications for the Project were faulty or incomplete.

67.    Faulty or incomplete portions of the plans, drawings and specifications impacted CRC increasing its costs and causing losses which CRC seeks to recover in this case.

68.    DEN ALF and Legend are liable for any costs and losses incurred by CRC which arise out of faulty or incomplete plans, drawings and/or specifications.

WHEREFORE, CRC prays for judgment against DEN ALF and Legend in an amount to be proven at trial, for interest, for legal fees, costs and expenses, and for such other relief as the Court deems proper.

## SIXTH CLAIM FOR RELIEF
### (Claim on Payment Bond – Law and Travelers)

69.    The allegations in all other paragraphs are incorporated as if fully set forth herein.

70.    Travelers, as surety, issued a Payment Bond dated, November 2, 2016 (the "Payment Bond").

71.    A true and correct copy of the Payment Bond is attached as **Exhibit D**.

72.    Law is identified as the principal on the Payment Bond.

73.    CRC provided labor, materials, supplies, and services to Law that were incorporated into and/or used in the construction of the Project.

74.    CRC submitted a written claim to Travelers for compensation under the Payment Bond.

75.    CRC qualifies as a "Claimant" under the Payment Bond.

76.     CRC's claim to Travelers for compensation under the Payment Bond satisfied the requirements for a claim under the Payment Bond

77.     CRC has a direct right of action against the Bond and is entitled to recover the amounts due it from Law for the labor, materials, supplies and services it provided for the construction of the Project.

78.     CRC is entitled to recover its claim under the Payment Bond against Law and Travelers jointly and severally, including interest and costs.

79.     CRC is presently owed $733,727.00 under the Payment Bond, plus accrued interest.

80.     The Payment Bond executed and issued by Travelers and Law is for the use and benefit of CRC, and Travelers and Law are indebted to CRC, jointly and severally, in the present principal amount $733,727.00 plus interest, legal fees and costs.

81.     Travelers has failed to acknowledge the undisputed amount owed to CRC.

82.     All conditions precedent to CRC's right to recover under the Payment Bond have been satisfactorily performed or waived.

WHEREFORE, CRC prays for entry of a judgment in its favor and against Law, Travelers, and the Payment Bond as follows:

> a.     That judgment enter against Law, Travelers, and the Payment Bond for the principal sum of $733,727.00;
>
> b.     For an award of legal fees, expenses, costs, and interest; and
>
> c.     For such other and further relief as the Court deems proper.

## SEVENTH CLAIM FOR RELIEF
### (Claim Pursuant to C.R.S. § 38-22-126 against Construction Funds Disburser – CrossFirst Bank)

83.     The allegations in all other paragraphs are incorporated as if fully set forth herein.

84.     Pursuant to C.R.S. § 38-22-126(4), CRC served Bank, by certified mail, with a copy of its Notice to Disburser.

85.     CRC subsequently recorded said Notice to Disburser on August 2, 2018 in the records of the Clerk and Recorder of the City and County of Broomfield, Colorado.  A copy of said Notice is attached hereto as **Exhibit E.**

86.     Upon receipt of said Notice and pursuant to C.R.S. § 38-22-126(6), Bank, as the disburser, had a duty to ascertain the monies due and owing to CRC and to pay such amount directly to CRC or to hold said amount until final determination of the actual amounts due to CRC.

87.     Upon information and belief, Bank, the disburser, has not complied with the requirements of C.R.S. § 38-22-126.

88.     In the event that Bank failed to comply with its obligations under C.R.S. § 38-22-126, and to the extent there were sufficient funds remaining to be disbursed, Bank is liable to CRC in the amount set forth in the Notice to Disburser, $699,294.00, plus interest, legal fees, and costs.

WHEREFORE, CRC prays for judgment in its favor against Defendant Bank in an amount of $699,294.00, plus pre- and post-judgment interest, legal fees, and costs and for such other and further relief that the Court deems proper in the circumstances.

## JURY DEMAND

### PLAINTIFF DEMANDS TRIAL TO A JURY OF SIX ON ALL ISSUES SO TRIABLE.

Dated this 10th day of August, 2018.

*This document was E-filed via the Colorado Court E-Filing System. The originally signed copy is on file at the offices of Allen & Curry, P.C.*

ALLEN & CURRY, P.C.


By: /s/ Jerome M. Joseph _____
        Jerome M. Joseph
        Vincent J. Wegher

Attorneys for CRC Construction Consulting, LLC

**Plaintiff's address:**
P.O. Box 6005
Edmond, OK 73083

9

 **THE LAW COMPANY, INC.**
345 Riverview, Wichita, KS 67203-4297
P.O. Box 1139, Wichita, KS 67201-1139
(316) 268-0200; FAX (316) 268-0210

**CRC Construction Consulting, LLC**
P.O. Box 18187
Oklahoma City, OK 73154
Attn: Mr. Casey Caldwell
Phone: 405-496-3610
Fax: 405-606-6172
Cell: 405-496-3610
Email: ccaldwell@crcbuilds.com
Federal ID: 45-1610737
JIS: 092-900-S

**SUBCONTRACT
No. 7517-AJ
(Base Agreement)**

**SUBCONTRACT AMOUNT: $2,514,325.00**

THIS AGREEMENT is made on December 12, 2016 by and between The Law Company, Inc. ("Contractor") and CRC Construction Consulting, LLC ("Subcontractor"), an independent contractor. The parties agree as follows:

**§1.   Project.** Subcontractor agrees to perform part of the construction (described in §2 below) of **The Legend at Broomfield** (the "Project"), being constructed for **DEN ALF 1, LLC c/o Legend Senior Living** ("Owner"), at **12600 Lowell Blvd., Broomfield, CO  80020**, in accordance with all terms, conditions and provisions of the agreement dated **July 12, 2016** between Owner and Contractor, including the General, Supplemental and Special Conditions, exhibits, notes and other documents referred to therein (the "Prime Contract"), this Base Agreement, Schedule A, attached hereto, and those Plans and Specifications prepared by **LK Architecture, Inc.** ("Architect") set forth on Schedule B, attached hereto, (collectively the "Contract Documents"), which shall be considered part of this Subcontract and Subcontractor agrees to be bound to Contractor and Owner by the terms and provisions thereof.

**§2.   Scope of Subcontract Work.** Subcontractor agrees to perform and complete the work set forth and described on Schedule A according to the Plans, Specifications and other Contract Documents set forth on Schedule B (the "Subcontract Work"). Subcontractor represents that it has made a careful analysis and comparison of the Plans, Specifications and Project site and has reported any errors, inconsistencies or omissions *discovered by CRC* to Contractor in writing. Subcontractor shall be responsible for layout, dimensions, line and grade, and elevations for the proper fitting of the Subcontract Work with all other work of the Project. Subcontractor shall also furnish, coordinate and install all sleeves, blockouts, core drilling and similar incidental items related to the Subcontract Work. If Subcontractor is required to provide design services as part of the Subcontract Work, Subcontractor shall procure such services from qualified design professionals licensed in the place where the Project is located and Contractor shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by any such design professionals. No substitutions or deviations shall be made in the Subcontract Work unless permitted in the Contract Documents and then only upon Subcontractor first receiving all approvals required under the Contract Documents for substitutions. All substitutions or deviations submitted by Subcontractor shall be clearly identified as such and shall have been coordinated with Contractor and all affected subcontractors and suppliers prior to submittal. Subcontractor shall indemnify Contractor for any increased costs incurred by Contractor as a result of such substitutions. Subcontractor shall perform no portion of the Subcontract Work for which the Contract Documents require submittal and review of shop drawings, product data, samples or similar submittals until the respective submittal has been approved by the Architect.

**§3.   Schedule and Timely Performance.**
    3.1    Contractor shall prepare the construction Schedule for the Project and revise the Schedule as work progresses to achieve the earliest possible completion of the Project. Subcontractor shall immediately furnish all information pertaining to the Subcontract Work requested by Contractor for implementation and revision of the Schedule. Subcontractor recognizes that revisions will be made to the Schedule and agrees to comply with such revisions without additional compensation. Subcontractor shall attend all on-site Project meetings regularly scheduled, or specially called by Contractor's project manager or superintendent, with not less than three (3) days written, facsimile, emailed or telephoned notice to Subcontractor. In the event of the absence of Subcontractor at any such Project meeting, Subcontractor shall be bound by any decisions or directives issued by Contractor at such meeting concerning the Schedule and/or the progress of the Project.

EXHIBIT A

3.2     It is agreed that time is of the essence and that Subcontractor shall be bound by the Schedule as to start, phasing and completion of the Subcontract Work.  Subcontractor shall commence the Subcontract Work within five (5) days after receipt of notice from Contractor and perform the same continuously and diligently so as not to cause delays in the scheduled completion of the Project, or in obtaining payments or final acceptance from Owner.  If Subcontractor does not commence the Subcontract Work upon said notice, or if the Subcontract Work is not performed with due speed, Subcontractor agrees, not later than two (2) days after receipt of Contractor's written notice, to supply such equipment, materials, skilled workers, competent supervision, services and other items as Contractor shall direct to complete the Subcontract Work in accordance with the Schedule.  Such notice, once given, shall continue in effect until the specified Subcontract Work has been fully completed even though Subcontractor has acted under said notice but has failed to do so uninterruptedly.  Subcontractor shall work overtime, Saturdays and Sundays at the direction of Contractor without additional cost to Contractor if overtime and Saturday and Sunday work is necessary to cure delay in the Schedule when such delay is due to delinquency by Subcontractor.

3.3     No extension of time for performance of the Subcontract Work, nor compensation for delay, shall be claimed by Subcontractor, or allowed to it, unless Subcontractor shall have submitted a written request to Contractor within four (4) days after occurrence of the cause of such request and unless (a) Owner grants Contractor a corresponding change to the Prime Contract or (b) Contractor and Subcontractor have otherwise agreed in writing as to the amount of additional time or compensation allowed.  Delays in Subcontractor's performance which occur by reason of its inability to secure timely delivery of materials, equipment or sufficient manpower shall not constitute grounds for an extension of time or compensation under this Subcontract.  In the event Contractor incurs liquidated or other damages by reason of delays or late completion of the Project, Contractor may assess against Subcontractor that portion of said damages attributable to any delay caused by Subcontractor.

3.4     Where Subcontractor knows, ~~or in the exercise of ordinary attention to the Subcontract Work should have known~~ or has been properly notified via published schedule updates or meeting agendas and minutes, of the necessity for any part of the Subcontract Work to be commenced or completed at any particular time so that ensuing operations by others are not delayed or interfered with, but fails to cause such commencement or completion, Contractor may, without notice to Subcontractor, permit such operations by others to proceed and thereafter require Subcontractor to cut and patch or otherwise repair or restore the work of such operations by others, as necessary, for the installation of the Subcontract Work.  The cost of all such repairs or restoration shall be borne by Subcontractor.

§4.     **Bonds.** Subcontractor shall provide to Contractor separate payment and performance bonds to secure Subcontractor's payment obligations relating to the Subcontract Work and its faithful performance of this Subcontract.  Each bond shall be equal to the Subcontract Amount, which includes the cost of said bonds, and shall be in a form and by a surety company satisfactory to Contractor.

§5.     **Subcontractor's Insurance.**
5.1     Subcontractor shall not commence the Subcontract Work until it has obtained all the insurance required under this §5.  Subcontractor shall maintain without interruption until the date of final payment of the Subcontract Amount (except for the coverages required to be maintained after final payment) the following types of insurance in the amounts set forth on Schedule A: (a) workers' compensation and employers liability insurance complying with the laws of the state(s) in which any of the Subcontract Work is performed; (b) commercial general liability insurance on an occurrence basis with coverage for products and completed operations (which shall be maintained for a period of two (2) years after final payment), broad form property damage, personal injury liability, explosion, collapse and underground (XCU), general aggregate per project and contractual liability; (c) commercial automobile liability insurance including all owned, non-owned and hired automobiles; and (d) umbrella/excess liability insurance.  Subcontractor's policies shall contain a provision that the coverages afforded thereunder shall not be canceled or not renewed until at least thirty (30) days prior written notice has been given to Contractor (unless the Prime Contract contains a longer advance notice requirement or conditions such as a government cancellation clause).  To the fullest extent permitted by law, primary and non-contributory additional insured status shall be provided on commercial general liability (including completed operations) and commercial automobile liability policies in favor of Contractor, Owner, Architect and all other parties required in the Prime Contract.  To the fullest extent permitted by law, a waiver of subrogation shall be provided on workers' compensation, commercial general liability, commercial automobile liability and all property policies insuring the Subcontract Work and/or Subcontractor's property and equipment in favor of Contractor, Owner, Architect and all other parties required in the Prime Contract.  Certificates of insurance evidencing all of said coverages shall be submitted to Contractor prior to commencement of the Subcontract Work.  Each of Subcontractor's suppliers and subcontractors who perform services on the Project shall be required by Subcontractor to comply with the requirements of this §5.  The

EXHIBIT A

insurance limits and coverage requirements of this Subcontract are minimum requirements and in no way shall limit the liability of Subcontractor.

5.2     Subcontractor shall bear the risk of loss to any part of the Subcontract Work, regardless of location, which is not compensated by builders risk insurance, including but not limited to any deductible, provided by Contractor or Owner for the Project. Subcontractor shall satisfy itself as to the existence and coverage of such builders risk insurance prior to commencement of any Subcontract Work. Subcontractor shall insure any property and equipment (including, without limitation, construction machinery, equipment, tools or temporary or portable buildings) used in the performance of the Subcontract Work.

**§6.     Subcontractor's Indemnification.**
6.1     To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and affiliates, agents and employees of any of them from and against claims, damages (including the loss of use of property resulting therefrom), losses and expenses (including but not limited to attorney's fees incurred in the defense of a claim or the enforcement of this indemnification provision), arising out of or resulting from performance of the Subcontract Work, but only to the extent caused by (a) negligent or other wrongful acts or omissions of Subcontractor, Subcontractor's subcontractors or suppliers, anyone directly or indirectly employed or contracted by them or anyone for whose acts they may be liable or (b) breach of this Subcontract by Subcontractor. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this §6.

6.2     In claims against any person or entity indemnified under this §6 by an employee of Subcontractor, Subcontractor's subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under §6.1 shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor or Subcontractor's subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts.

**§7.     Compliance with Laws.** Subcontractor shall at its own cost comply with all laws, regulations, codes, ordinances and rules of the United States and the municipality, county and state in which the Project is located. Subcontractor represents that it is currently in compliance with, and will remain in compliance with, the provisions of the Federal Immigration Reform and Control Act which prohibits the hiring and continued employment of unauthorized aliens. All labor and material, in addition to that shown on the Plans or specified in the Contract Documents, necessary to comply with said laws, regulations, codes, ordinances and rules shall be furnished by Subcontractor without extra charge. Subcontractor agrees to obtain and pay for all permits, licenses, bonds, deposits and official inspections required for the proper and lawful performance of the Subcontract Work and to pay all tap, connection and hook-up fees and charges imposed by governing bodies and utilities in connection with the Subcontract Work except as may be excluded on Schedules A or B. All official inspections shall be scheduled by Subcontractor in a timely manner so as not to cause delay to ensuing operations or the Schedule.

**§8.     Payments by Subcontractor.** Subcontractor agrees to (a) meet its payrolls on time; (b) comply with any collective bargaining agreements pertaining to labor and the payment of welfare and fringe benefits; (c) pay in full for all materials, equipment and other items procured for the Subcontract Work when due, all of which shall be unconditionally owned by Subcontractor and free of any third party liens; (d) pay all royalties and license fees which may be due on the inclusion of any patented materials in the Subcontract Work; and (e) apply all funds received from Contractor to the payment of costs incurred on this Project and not to divert said funds to the payment of costs incurred on other projects. Subcontractor agrees to keep all records necessary to evidence its compliance with these obligations and to make them available for inspection by Contractor upon request. Contractor may contact Subcontractor's material suppliers and subcontractors to verify the payment status of accounts relating to this Subcontract. If Contractor has reason to believe such Subcontractor obligations are not being timely paid, Contractor may give written notice of a potential claim to Subcontractor and, thereafter, take any steps deemed necessary to assure that progress payments are utilized to pay such obligations, including the issuance of joint checks. In the event a subcontractor or supplier of Subcontractor, at any tier, files a claim or lien against the Project, Subcontractor shall within three (3) days after receipt of written notice from Contractor provide to Contractor a recorded copy of a lien release or lien discharge bond which legally removes the claim or lien from the Project premises. Subcontractor shall indemnify and hold Contractor and Owner harmless from any loss, damage or expense, including attorney's fees, arising out of or relating to any such claim or lien.

**§9.     Taxes.** All applicable sales taxes are included in the Subcontract Amount. Subcontractor shall timely pay all federal, state and local payroll, unemployment, sales, use, gross receipts, business privilege and similar taxes incurred by reason of the Subcontract Work. Subcontractor shall indemnify and hold Contractor harmless from any such taxes imposed on Contractor as a result of Subcontractor's failure to timely file and pay such taxes.

EXHIBIT A

§10.    **Subcontracting; Assignments.** Subcontractor shall, not later than twenty-one (21) days prior to an award of a contract, furnish in writing to Contractor the names of subcontractors proposed for each principal portion of the Subcontract Work and any suppliers who are to furnish materials and/or equipment fabricated to a special design for the Project. Subcontractor shall not subcontract any portion of the Subcontract Work to a proposed person or entity to whom the Contractor, Architect or Owner has a reasonable objection. The assignment by Subcontractor of this Subcontract, or any interest therein, or of any money due or to become due hereunder, without the written consent of Contractor shall be void. It is understood that any such assignment, if consented to, shall not operate to relieve Subcontractor of any of its Subcontract obligations. Subcontractor agrees that regardless of whether it does effect such subcontracting or an assignment, it will directly employ, and cause to be present at the Project site continuously until all Subcontract Work is satisfactorily completed, a competent and experienced superintendent or foreman, subject to approval by Contractor, to supervise, oversee, and represent Subcontractor in the performance of the Subcontract Work.

§11.    **Contractor's Remedies on Subcontractor's Default.** In the event of (a) Subcontractor's failure to comply with the notices provided for in §3; (b) the stoppage of any work on the Project due to a labor dispute involving Subcontractor or otherwise arising out of the Subcontract Work; (c) a breach by Subcontractor of any other terms of this Subcontract and its failure to correct such breach within three (3) days after receipt of written notice thereof from Contractor; or (d) a petition under any of the provisions of the Bankruptcy Code of The United States is filed by or against Subcontractor or Subcontractor makes an assignment for the benefit of creditors or Subcontractor becomes insolvent or a receiver of Subcontractor's property is appointed or Subcontractor should otherwise become disabled from complying with the provisions hereof; then Contractor, without further notice to Subcontractor, shall have the right to any one or any combination of the following remedies: (A) supply workers, material, equipment and other items as Contractor deems advisable for the completion of the Subcontract Work; (B) contract with one or more additional subcontractors to complete such part of the Subcontract Work as Contractor determines will provide the most expeditious completion of the Subcontract Work; and/or (C) terminate this Subcontract and use any materials, implements, equipment, appliances or tools furnished by, Subcontractor in completing the Subcontract Work itself, or, at its option, contract with a subcontractor or subcontractors, in whole or in part, for the completion of the Subcontract Work. Contractor may offset all costs incurred by it in the pursuance of any of the remedies provided herein, together with Contractor's direct job expenses, its attorneys' fees and reasonable overhead and profit, against any sums otherwise due or to become due Subcontractor. Subcontractor and its surety shall be liable for the payment of any amount by which such costs and profit may exceed the unpaid balance of the Subcontract Amount.

§12.    **Obligations and Responsibilities.** To the extent of the Subcontract Work, Subcontractor shall assume toward Contractor all the obligations and responsibilities, including safety precautions to protect persons and property, which Contractor, by the Contract Documents, assumes toward Owner and Architect. Contractor shall have the benefit of all rights and remedies against Subcontractor which Owner, under the Contract Documents, has against Contractor. All rights of Contractor, Owner and Architect under the Contract Documents shall be preserved and protected with respect to the Subcontract Work to be performed by Subcontractor so that any subcontracting by Subcontractor thereof will not prejudice such rights. Subcontractor understands and agrees that the word "Contractor", and all variations thereof, appearing in the various sections of the Specifications and/or on the Plans shall be construed to mean Subcontractor if such Specification sections are included in, or related to, the scope of the Subcontract Work. In all instances pertaining to the Subcontract Work, where a specific time is expressed within the Contract Documents for when documents, submittals, reports, claims or other communications are to be given to Architect or Owner, Subcontractor shall furnish any such documents, submittals, reports, claims or other communications to Contractor at least three (3) days prior to the date upon which it must, pursuant to the Contract Documents, be furnished to Owner or Architect. In any dispute between Subcontractor and Contractor, Subcontractor shall be bound to Contractor to the same extent that Contractor is bound to Owner (a) under the Contract Documents; (b) by any and all decisions or determinations made thereunder by a party so authorized in the Contract Documents; and (c) by any final decision of a court or in arbitration. In no event shall Contractor be liable for any damages incurred by Subcontractor in connection with this Project to any greater extent than Owner is liable to Contractor.

§13.    **Subcontractor's Warranty.** Subcontractor warrants and guarantees that all labor provided by or through it in the performance of the Subcontract Work shall be provided by workers skilled and experienced in their respective trades and crafts and that all workmanship and materials, equipment and other personal property furnished by it in the performance of the Subcontract Work shall be new and of high quality, free from defects and in full conformance with the Contract Documents and applicable codes and standards. Subcontractor further warrants and guarantees that the Subcontract Work shall be free from defects in workmanship and materials for the same period of time as Contractor is liable to Owner for such warranty and guarantee. If requested by Contractor, Subcontractor shall execute a separate instrument of warranty and guarantee embodying the provisions of this §13 and/or as required by the Contract Documents without additional cost, but the fact that such separate instrument is not requested or executed, Subcontractor

EXHIBIT A

shall not be relieved of these warranty obligations. If, after notice of defective Subcontract Work discovered during the warranty period, Subcontractor refuses or neglects to repair or replace, within the time required by Owner, all such defects in the Subcontract Work, together with any damage to other property caused thereby, Contractor shall have the right to remedy and make good such defects and damage and charge Subcontractor therewith, or, if Contractor has any monies which may be payable to Subcontractor arising from this Subcontract or any other agreement, then Contractor shall have the right to retain said monies, but, in all events, Subcontractor shall be liable for and pay all costs by reason of the remedying of said defects and damage. Subcontractor's warranty and guarantee shall survive final payment to it of the Subcontract Amount.

**§14.   Subcontract Amount and Terms and Conditions of Payment.**
14.1    Subject to the following conditions, Contractor agrees to pay the Subcontract Amount to Subcontractor for its full and complete performance of the Subcontract Work and its other obligations set forth in this Subcontract. Except for additions and/or deductions for changes as may be agreed upon or determined pursuant to this Subcontract, said Subcontract Amount is a fixed amount and shall not be increased due to escalations in prices imposed upon Subcontractor, its subcontractors, suppliers or other vendors, nor by reason of any escalation or renegotiation of wages.

14.2    THE PROVISIONS IN CLAUSES (a) THROUGH (g) BELOW CONSTITUTE CONDITIONS PRECEDENT TO CONTRACTOR'S OBLIGATIONS TO PAY ANY PART OF THE SUBCONTRACT AMOUNT TO SUBCONTRACTOR. The Subcontract Amount shall become due and be paid in installments as follows: Subcontractor shall submit a monthly application for payment in an amount equal to 90% of the undisputed value (based upon a schedule of values submitted by Subcontractor which allocates the Subcontract Amount to the various parts of the Subcontract Work in a manner satisfactory to Contractor) of the Subcontract Work completed and approved by Contractor for the period covered by such application for payment. Progress payments shall be made to Subcontractor within seven (7) business days after receipt by Contractor of payment from Owner, the retention of 10% withheld to be paid to Subcontractor within seven (7) business days after final payment for the Subcontract Work has been received by Contractor from Owner, provided that: (a) an application for progress payment, on forms to be furnished by Contractor (with breakdowns to be attached as required in the forms), is properly prepared by Subcontractor and received by Contractor not later than the day of the month set forth in Schedule A for which Subcontractor is requesting a progress payment; (b) Subcontractor shall have properly executed and returned this Subcontract and shall have furnished the bonds and certificates of insurance required by this Subcontract; (c) Subcontractor has provided with or prior to its transmittal of the current application for progress payment its partial waiver of lien to the extent of the payment received on its last prior progress billing or such other lien waiver as may be required by Owner as a condition of payment; (d) ~~Subcontractor has submitted to Contractor, if requested, satisfactory evidence that no unpaid claims exist for labor, materials, or other obligations incurred by Subcontractor in the performance of this Subcontract;~~ *Subcontractor has submitted to Contractor, if requested, satisfactory evidence that no unpaid claims exist for labor, materials, or other obligations incurred by Subcontractor in the performance of this Subcontract for the portion of the Subcontract Work for which the Subcontractor has been previously paid;* (e) Contractor has received full payment from Owner of Contractor's monthly or final application for payment; provided, however, that if Contractor has received from Owner some but less than full payment of the amount set forth in Contractor's application for payment and, after appropriate back charges for that part of such nonpayment which is specifically chargeable to particular subcontractors, a deficiency still remains, Contractor shall be obligated to pay to Subcontractor a proportionately reduced amount; (f) Subcontractor has, to the satisfaction of Contractor, completed all items concerning the Subcontract Work on any punch list which has been issued by Contractor, Architect or Owner; and (g) prior to final payment, Subcontractor shall have furnished to Contractor: (A) written consent of its surety to final payment, (B) warranties, guarantees, equipment manuals, as-built or record drawings and other closeout items required in the Contract Documents or this Subcontract and (C) a properly completed and executed conditional final waiver of lien and release on a form to be furnished by Contractor.

14.3    Contractor may, in its sole discretion, make advance or other payments to or for the account of Subcontractor at variance with the terms of this Subcontract, in which event Contractor's rights and remedies under this Subcontract and under any surety bonds securing this Subcontract shall in no way be prejudiced or impaired. Contractor may also, in its sole discretion, withhold from any payment otherwise due to Subcontractor an amount sufficient to protect Contractor against any breach of Subcontractor's obligations or any unpaid claims, notices of intent to file liens or liens known to exist against Subcontractor arising out of the Subcontract Work, or any other agreement between the parties, until such time as Subcontractor has corrected, to Contractor's satisfaction, any such Subcontractor breach or Subcontractor shall have delivered to Contractor a full and effective release of such unpaid claims. Notwithstanding anything to the contrary herein, Contractor shall have the right to defer or withhold the whole or any part of any payment if in Contractor's judgment, reasonably exercised, the remaining balance of the Subcontract Amount is insufficient to complete the Subcontract Work. No partial payment made by Contractor shall operate as an approval and acceptance of Subcontract Work.

EXHIBIT A

**§15.   Changes in Subcontract Work.** Contractor shall have the right at all times, without notice to Subcontractor's surety, to direct Subcontractor to make changes in the Subcontract Work consisting of additions, deletions, revisions or the method or manner of performing the Subcontract Work. Subcontractor shall have no such rights to make such changes unless directed by Contractor. Upon request of Contractor, and prior to commencement of any such changed Subcontract Work unless directed otherwise in writing by Contractor, Subcontractor shall promptly submit pricing and technical data to Contractor in a manner consistent with the requirements of this Subcontract and the Contract Documents. No change shall entitle Subcontractor to additional payment or time to complete the Subcontract Work unless a change order, on Contractor's form, is signed by an officer of Contractor or by Contractor's project manager; provided, that on minor items of extra work arising at the Project during the course of construction, Contractor's superintendent shall be authorized to issue a Field Work Order (on Contractor's form) for any such item which will not result in a net increase in the Subcontract Amount in excess of $1,000.00. Any changes in the Subcontract Work made by Subcontractor without such valid written approval from Contractor shall have been made solely at Subcontractor's risk and, where such changes involve additional cost, Contractor shall be under no obligation to compensate Subcontractor therefor. Amounts payable to Subcontractor for approved changes in the Subcontract Work shall be included in Subcontractor's monthly applications for progress payment.

**§16.   Subcontractor's Temporary Equipment, Facilities and Services.** Subcontractor shall be responsible for providing its own hoists, walks, ramps, ladders, runways, scaffolding, shoring, bracing, covering and any other temporary materials or equipment that may be required to perform the Subcontract Work. Subcontractor shall also furnish its own temporary office and storage facilities, telephone, utilities and other necessary services. If directed by Contractor, Subcontractor shall equip its foremen with a mobile phone to facilitate communication with Contractor. All materials, equipment, trailers, offices and parking areas for Subcontractor's employees shall be located where directed by Contractor's superintendent and shall be promptly removed from the Project upon completion.

**§17.   Protection of Persons and Property.** Subcontractor shall take precautions and provide safeguards necessary to (a) protect workers and other persons from injury who may be affected by Subcontractor's operations and (b) protect the Subcontract Work and the work and property of others from damage caused by Subcontractor's operations. Should Subcontractor cause damage to the work or property of Contractor, Owner or others, Subcontractor shall promptly remedy such damage to the satisfaction of Contractor or Contractor may so remedy and charge the cost and expense thereof to Subcontractor by the issuance of a deductive change order.

**§18.   Back Charges.** Back charges for damage to the Subcontract Work caused by others will not be approved unless the offending party can be clearly identified and the back charge request is submitted within four (4) days of the event that caused the back charge; otherwise, the Subcontractor's right for such claim shall be waived. In the event that a change order is issued for a back charge to Contractor or a subcontractor, charges for supervision, equipment, overhead and profit shall not be included in such back charges. Charges shall be limited to direct hourly labor, payroll taxes and insurance for direct labor, materials and sales tax. Labor charges must be supported by time sheets signed by Contractor's superintendent and material charges must be supported by invoices.

**§19.   Clean-Up.** Subcontractor shall keep the premises clean and free at all times from accumulation of waste or excess materials, debris and rubbish resulting from the performance of the Subcontract Work and, at the completion thereof, it shall clean the Subcontract Work in a manner satisfactory to Contractor. Should Subcontractor fail to comply with these clean-up provisions within two (2) days after receiving written demand for such compliance from Contractor, then Contractor may itself or through others perform such cleaning and charge the cost and expense thereof, including reasonable overhead and profit, to Subcontractor by the issuance of a deductive change order.

**§20.   Dispute Resolution.**

20.1   In the event a dispute arises between Contractor and Subcontractor in regard to this Subcontract (a Contractor-Subcontractor dispute), Subcontractor shall be conclusively bound by Contractor's decision unless Subcontractor initiates arbitration or commences a legal action, as provided below, within thirty (30) days following Subcontractor's receipt of notification of Contractor's decision.

20.2   If Contractor determines the Contractor-Subcontractor dispute involves in whole or in part the subject matter of an actual or potential dispute or claim between Owner and Contractor (an Owner-Contractor dispute), and if the Prime Contract provides for arbitration of that Owner-Contractor dispute, then Subcontractor agrees to a joint arbitration with Owner, Contractor and Subcontractor which shall determine the dispute.

20.3   If Contractor determines the Contractor-Subcontractor dispute does not involve the subject matter of an Owner-Contractor dispute or court action initiated by a third party, then the Contractor-Subcontractor dispute shall be resolved through an arbitration proceeding as described below, unless the amount involved in the

EXHIBIT A

Contractor-Subcontractor dispute exceeds $100,000, in which case the Contractor-Subcontractor dispute shall not be subject to arbitration, and shall be resolved in a Kansas court (state or federal).

20.4    In those Contractor-Subcontractor disputes to be resolved pursuant to arbitration, as outlined above, the arbitration proceedings shall be conducted in Wichita, Kansas, pursuant to the Construction Industry Rules of the American Arbitration Association (AAA), by one neutral arbitrator who shall be an attorney experienced in the arbitration of construction disputes. The award rendered by the arbitrator shall be final and binding upon the parties and their sureties, and judgment may be entered upon it in any court having jurisdiction thereof

20.5    Any claims by Contractor or Subcontractor against the other party's surety relating to a Contractor-Subcontractor dispute shall be decided in the same forum as the Contractor-Subcontractor dispute. Subcontractor shall continue the Subcontract Work and maintain the Schedule pending the resolution of any dispute.

**§21.    Safety Requirements.** Subcontractor shall at its own cost comply fully with all provisions of all statutes, regulations, standards, codes, ordinances and rules of the federal, state and local governments pertaining to safety and health. Subcontractor shall establish safe and healthful working conditions for its employees according to all occupational safety and health standards issued by the Secretary of Labor throughout the performance of the Subcontract Work. Subcontractor further agrees to notify Contractor in writing as to any unsafe working conditions which may exist in any areas at the Project site where Subcontractor's employees may be working. Upon the request of Contractor, Subcontractor shall submit to Contractor copies of Subcontractor's written safety program, site specific programs and/or Material Safety Data Sheets for performance of the Subcontract Work. Contractor and Subcontractor shall indemnify the other party from and against fines or penalties imposed as a result of safety violations to the extent that such fines or penalties are caused by its failure to comply with these safety requirements.

**§22.    Hazardous Materials and Substances:**
22.1    Subcontractor covenants and agrees to comply with all applicable federal, state or local laws, rules, regulations, orders and permits related to environmental safety or industrial hygiene ("Environmental Laws") in the performance of this Subcontract.

22.2    Subcontractor covenants and agrees that it will be responsible for the proper and safe storage, handling, removal and disposal, in accordance with Environmental Laws, of all hazardous or toxic substances or wastes, hazardous chemicals, pollutants or any other material regulated under Environmental Laws ("Hazardous Substances") which are used, stored, handled, treated or disposed of by Subcontractor in connection with the Subcontract Work.

22.3    Subcontractor covenants and agrees to retain for a period of one (1) year from the expiration of this Subcontract all records, notices, reports, analyses, manifests, permits, licenses and other written information or documentation, prepared by or at the direction of Subcontractor or received by Subcontractor, pertaining to Subcontractor's usage, storage, handling, treatment or disposal of Hazardous Substances at, to or from the Project, and will upon request by Contractor, promptly furnish a true and correct copy of such information or documentation to Contractor.

22.4    Subcontractor shall not, without the prior written consent of Contractor, cause or permit any Hazardous Substances to be spilled, dumped, discharged or otherwise released at the Project or any other property, other than in strict compliance with Environmental Laws and at levels or quantities which do not, and will not, require cleanup, removal or remedial action under Environmental Laws. In the event a release of Hazardous Substances not expressly permitted above nevertheless occurs, in a reportable quantity, Subcontractor will properly report to any and all applicable governmental authorities as required by applicable Environmental Laws, with a copy contemporaneously sent to Contractor.

22.5    In the event Subcontractor breaches its duties under this §22, or if the presence of Hazardous Substances introduced at the Project by Subcontractor results in contamination of the Project, any soils, groundwater, waterways or the air, Subcontractor shall indemnify and hold harmless Contractor from and against any and all claims, demands, damages, expenses, fees, costs, fines, penalties, suits or causes of action of any kind as a result of such breach or contamination. This includes, without limitation, the cost and expense incurred to investigate site conditions or any cleanup, removal or remedial work required by any governmental authority or court order.

EXHIBIT A

**§23.   Suspension or Termination.**  Contractor may, at any time and for its convenience, suspend or terminate this Subcontract. Upon receipt of a written notice of termination, Subcontractor shall immediately stop the Subcontract Work and terminate or assign existing subcontracts, purchase orders and agreements pertaining to the Subcontract Work in accordance with such notice. If such suspension or termination results from Owner's suspension or termination of the Prime Contract, or any part thereof which includes the Subcontract Work, Contractor's liability to Subcontractor shall be limited to the extent of Contractor's recovery on Subcontractor's behalf pursuant to the Contract Documents. Otherwise, provided Subcontractor is not in default, Subcontractor shall receive, as full compensation, payment for Subcontract Work satisfactorily performed to the date of termination. Subcontractor waives and relinquishes all other claims for payment and damages including, but not limited to, anticipated or lost profits.

**§24.   Equal Opportunity.**  During the performance of this Subcontract, Subcontractor agrees it will not discriminate against any employee or applicant because of race, color, age, religion, sex, disability, marital status or national origin. Subcontractor shall also comply with applicable laws, regulations and special requirements of the Contract Documents regarding equal employment opportunity and affirmative action programs.

**§25.   Notices.**  Any written notice shall be deemed to have been duly served if deposited in the United States mail and addressed to Contractor at P.O. Box 1139, Wichita, Kansas 67201 and to Subcontractor at P.O. Box 18187, Oklahoma City OK 73154, sent via confirmed facsimile transmission to Contractor at 316-268-0210 and to Subcontractor at 405-606-6172, or when delivery to the other party is verified by overnight courier.

**§26.   Waiver and Severability.**  No action or failure to act by Contractor shall constitute a waiver of any breach of this Subcontract by Subcontractor nor prevent Contractor from enforcing any Subcontract provision. Any waiver in respect to any provision or breach of the Subcontract must be in writing and signed by Contractor to be effective or enforceable; provided, however, any such signed waiver shall not constitute a waiver of any subsequent breaches nor a waiver of Contractor's right to enforce Subcontract provisions in the future. The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity of continuing force and effect of any other provision.

**§27.   Entirety of Subcontract.**  This Subcontract represents the entire agreement of the parties as to the Subcontract Work to be performed by Subcontractor and may not be amended, altered, modified or terminated (except as provided in §11 and §23) except by the written agreement of the parties. In the event of any inconsistency between any of the Contract Documents, the specific provisions of this Base Agreement and Schedules A and B shall govern.

**§28.   Governing Law.**  The law of the place of the Project shall govern the interpretation of this Subcontract. In the event that it is determined by a court of competent jurisdiction (or by an appointed arbitration panel) that any portions of this Subcontract are contrary to applicable and mandatory laws of the jurisdiction in which the Project is being constructed, this Subcontract shall be amended to the extent necessary to comply and be consistent with such local laws. If such amendments occur, the remaining portions of this Subcontract shall remain in full force and effect.

IN WITNESS WHEREOF, Contractor and Subcontractor have executed this Agreement as of the date first above written.

THE LAW COMPANY, INC                          CRC CONSTRUCTION CONSULTING, LLC

By:  _____                  By  _____
     Rob Davis, Project Manager

                                              Print Name/Title:  _Casey Caldwell / President_

EXHIBIT A

## EXTRA/CHANGED WORK ACKNOWLEDGMENT

Subcontractor specifically acknowledges that:

1. Subcontractor is not entitled to payment for any extra or changed work unless it first receives a written directive or change order signed by Contractor's project manager or an officer of Contractor.

2. Contractor's field supervisors (including the project superintendent and assistant superintendents) have no authority to issue or sign any change order.  Furthermore, Contractor's field supervisors are not authorized to sign subcontractor work orders or tickets.

3. Contractor has no obligation to pay Subcontractor for any extra or changed work without valid written approval from Contractor.

SUBCONTRACT NO. 7517-AJ

This Page Approved:     For Contractor _____     For Subcontractor _____

EXHIBIT A

# SCHEDULE A

Description and conditions of Subcontract Work to be performed by **CRC Construction Consulting, LLC** (Subcontractor), under Subcontract No. **7517-AJ**, attached hereto.

## SCOPE OF SUBCONTRACT WORK

Furnish all labor, materials, equipment, tools, services, supplies, shop drawings, product data, samples, testing and incidentals, including freight and sales/use tax thereon, as required for the complete installation of the work provided for in the Specification sections as referenced in Exhibit No. 1, attached hereto, and in accordance with Plans and Specifications listed on Schedule B.

JIS CODE: 092-900-S

Contractor and Subcontractor hereby acknowledge that they have agreed as to all of the items included in the Subcontract Work as shown on Exhibit No. 1, a copy of which is attached hereto and made a part hereof; except, however, Subcontractor agrees that those items which, although not noted in Exhibit No. 1, are necessary to perform the Subcontract Work under generally prevailing and accepted industry standards applicable to the Subcontract Work, or are required by, or inferable from, the Plans, Specifications or other Contract Documents as listed on Schedule B, shall also comprise Subcontract Work and be the responsibility of Subcontractor to perform at its cost.

## SUPPLEMENTARY CONDITIONS TO THE SUBCONTRACT

The following enumerated provisions are intended to adapt the Base Agreement to this specific Project and to the Contract Documents set forth in Schedule B. These provisions either supplement the provisions in the Base Agreement or, where so indicated, amend and/or replace Base Agreement provisions. Subcontractor, by its execution of the Subcontract and its initialing of the pages comprising this Schedule A, acknowledges that it has read all provisions herein contained and/or referred to and has approved and accepted them as written.

1. **Owner/Architect's Approval of Subcontractor:**
   1.1. Subcontractor acknowledges that the Contract Documents grant Owner and Architect the right to object to any subcontractor. Contractor and Subcontractor agree that this Subcontract is subject to, and contingent upon, approval of the Subcontractor by both Owner and Architect. Should either Owner or Architect exercise its right to object to Subcontractor, it is mutually agreed that this Subcontract shall be null and void and each party shall bear its own expenses.

2. **Shop Drawings, Product Data, Samples and Other Submittals:**
   2.1. Subcontractor shall submit to Contractor per Contract documents.
   2.2. If product or workmanship specifications for the Subcontract Work require compliance with referenced standards or specifications (ASTM, ANSI, Federal, trade associations, etc.), Subcontractor shall include copies of such standards or specifications in its submittals to Contractor.
   2.3. All submittals shall be sent to: Brian Siefker (Siefker@law-co.com)

3. **Payments:**
   3.1. Subcontractor shall submit for Contractor's approval a Schedule of Values for the Subcontract Work, using the format required by Contractor's project manager, not later than 14 days after receipt of contract.

Schedule A (04/14)                 SUBCONTRACT NO. 7517-AJ                              Page 1 of 3

This Page Approved:              For Contractor _____(W)_____      For Subcontractor ___CC___

EXHIBIT A

3.2. Each request for payment shall be made on the Subcontractor's Application for Payment form and shall be received in Contractor's office by the 21st day of the month.

**4.  Subcontractor's Insurance:**

4.1. Subcontractor shall maintain, at a minimum, the following insurance coverages pursuant to §5 of the Subcontract Base Agreement:

| Coverage Type | Coverage Amount | |
|---|---|---|
| Worker's Compensation | Statutory | |
| Employer's Liability | $500,000 (each accident) | |
| | $500,000 (disease-policy limit) | |
| | $500,000 (disease-each employee) | |
| Commercial General Liability | General Aggregate | $2,000,000 |
| | Completed Operations | $2,000,000 |
| | Personal Injury | $1,000,000 |
| | Each Occurrence | $1,000,000 |
| Auto Liability | $1,000,000 Combined Single Limit | |
| Umbrella/Excess Liability | $1,000,000 General Aggregate | |

4.2. If the Subcontract Work requires design services including, but not limited to, the preparation of design, drawings or specifications, Subcontractor shall also provide errors and omissions insurance covering such design services. Coverage shall be a minimum of $1,000,000.

4.3. If the Subcontract Work requires environmental remediation services, Subcontractor shall also provide pollution liability insurance covering such remediation services. Coverage shall be a minimum of $1,000,000.

4.4. If the Subcontract Work requires application of an Exterior Insulation Finish System (EIFS), Subcontractor's submitted certificate of insurance shall evidence both commercial general liability and umbrella/excess liability coverage for such EIFS work.

4.5. Certificate of Insurance with the required limits must be received by The Law Company, Inc. prior to beginning work on site.

**5.  Changes in the Subcontract Work**

5.1. All changes in the Subcontract Work shall be made in full accordance with the Contract Documents.

5.1.1. An itemized proposal for all changes shall be required and shall include, but shall not be limited to, the following breakdown of the costs:

5.1.1.1. Material (including quantities and unit costs)

5.1.1.2. Labor (including quantities and unit costs)

5.1.1.3. Equipment (including quantities and unit costs)

5.1.1.4. Overhead and Profit (not to exceed 10% of direct costs)

5.1.2. All requests for changes shall be promptly and properly priced and returned to the Contractor not later than 14 days following Subcontractor's receipt of such request.

5.1.3. Subcontractor shall be responsible for any additional costs resulting from Subcontractor's delinquent or inadequate pricing of changes.

**6. Specific Pass-Through Obligations**

6.1.  Any provision of the Prime Contract required to be inserted into this Subcontract is deemed to be incorporated herein and such provision shall apply to Subcontractor and its subcontractors of any tier with the same force and effect as if it were inserted herein in full text.  The omission of any such provisions in this Subcontract shall not be construed to diminish, abrogate or limit any responsibilities or obligations of Subcontractor under this Subcontract or the Contract Documents.

**7. Subcontractor SWPPP Certification**

7.1.  Subcontractor SWPPP Certification must be completed and returned to The Law Company, Inc. prior to beginning work on site.

EXHIBIT A

SUBCONTRACTOR CERTIFICATION
STORMWATER POLLUTION PREVENTION PLAN

October 31, 2016

The Legend at Broomfield

Operator(s):

As a subcontractor, you are required to comply with the Stormwater Pollution Prevention Plan (SWMP) for any work that you perform on-site. Any person or group who violates any condition of the SWMP may be subject to substantial penalties. You are encouraged to advise each of your employees working on this project of the requirements of the SWMP. A copy of the SWMP is available for your review at the office trailer.

Each subcontractor engaged in activities at the construction site that could impact stormwater must be identified and sign the following certification statement:

I certify under the penalty of law that I have read and understand the terms and conditions of the SWMP for the above designated project and agree to follow the practices described in the SWMP.

This certification is hereby signed in reference to the above named project:

Company:

Address:

Telephone Number:

Type of construction service to be provided:

Signature: *Cag Caldwell*

Title: *President*

Date: *5/3/17*

EXHIBIT A

# EXHIBIT NO. 1
## Scope for: Framing/Drywall/Acoustic Ceilings/Blocking

| | | |
|---|---|---|
| **Project:** | The Legend at Broomfield<br>12600 Lowell<br>Broomfield, CO 80020 | **Date:** December 12, 2016<br>**Prepared By:** Rob Davis |
| **Firm:** | CRC Construction<br>Consulting, LLC | **Phone:** (405) 496-3610 |
| **Address:** | PO Box 18187<br>Oklahoma City, OK 73154 | 16208 Snowy Owl Drive<br>Edmund, OK 73013 | **Fax:** (405) 606-6172<br>**Cell:** (405) 496-3610 |
| **Contact:** | Casey Caldwell | **Federal ID:** 45-1610737 |
| **Email:** | ccaldwell@crcbuilds.com | **JIS:** 092-900S |

The purpose of this scope outline is not to limit the Subcontract Work to that listed, but rather to assist the Contractor in evaluating the Subcontractor's proposal on this Project. Subcontractor agrees that items which, although not noted in this Exhibit No. 1, are necessary to perform the Subcontract Work under generally prevailing and accepted industry standards applicable to the Subcontract Work, or are required by, or inferable from the Plans, Specifications or other Contract Documents as listed on Schedule B, shall also comprise Subcontract Work and be the responsibility of Subcontractor to perform at its cost. Subcontractor, by its execution of the Subcontract and its initialing of the pages comprising this Exhibit No. 1, acknowledges that it has read all provisions herein contained and/or referenced to and has approved and accepted them as written.

> **LEGEND:**
> X = Furnished and Installed by Subcontractor      O = By Others
> I = Installed Only by Subcontractor      N/A = Not Applicable
> F = Furnished Only by Subcontractor      YES = Subcontractor Acknowledges That This Is Included

**Part 1:** To furnish all necessary management, labor, materials, equipment, tools, services, supplies, shop drawings, product data, samples, testing and incidentals, including freight, shipping charges and sales/use tax thereon, as required for the complete furnishing and installation of the Work provided for in the following Specification Sections and in accordance with all other Contract Documents listed on Schedule B, attached hereto.

| | | Specification Section | Description |
|---|---|---|---|
| YES | 1. | DIV 01 | **General Requirements – Sections 01100 thru 01820 Complete** |
| YES | 2. | 01106 | Geotechnical Report |
| YES | 3. | 01715 | Fire Resistant Rated Assemblies Requirements |
| YES | 4. | DIV 03 | **Concrete (As it relates to this scope of work)** |
| YES | 5. | DIV 04 | **Masonry (As it relates to this scope of work)** |
| | 6. | DIV 05 | **Metals** |
| I | 7. | 05310 | Steel Deck |
| YES | 8. | 05400 | Cold Formed Metal Framing |
| YES | 9. | 05440 | Cold Formed Metal Trusses |
| | 10. | DIV 06 | **Wood and Plastics** |
| YES | 11. | 06202 | Interior Finish Carpentry (As it relates to the blocking scope of work) |
| YES | 12. | 06411 | Wood Faced Architectural Cabinets (As it relates to the blocking scope of work) |
| YES | 13. | 06412 | Plastic-Laminate-Faced Architectural Cabinets (As it relates to the blocking scope of work) |
| YES | 14. | 06640 | Fiber Reinforced Plastic Paneling |
| | 15. | DIV 07 | **Thermal and Moisture Protection** |
| YES | 16. | 07210 | Building Insulation |
| YES | 17. | 07272 | Fluid Applied Membrane Air Barriers (As it relates to this scope of work) |
| YES | 18. | 07812 | Intumescent Mastic Fireproofing (As it relates to this scope of work) |
| YES | 19. | 07841 | Though Penetration Firestop Systems (As it relates to this scope of work) |
| YES | 20. | 07920 | Joint Sealants (As it relates to this scope of work) |

Subcontract No. 7517-AJ

Approved:   For Contractor ___N___      For Subcontractor ___CC___

EXHIBIT A

## EXHIBIT NO. 1
### Scope for: Framing/Drywall/Acoustic Ceilings/Blocking

|  | 21. | DIV 08 | Openings |
|---|---|---|---|
| YES | 22. | 08110 | Hollow Metal Doors & Frames (As it relates to this scope of work) |
| YES | 23. | 08115 | Steel Frames (As it relates to this scope of work) |
| YES | 24. | 08311 | Access Doors & Frames (As it relates to this scope of work) |
| YES | 25. | 08349 | Automatic Overhead Coiling Fabric Curtain (As it relates to this scope of work) |
| YES | 26. | 08561 | Vinyl Windows (As it relates to this scope of work) |
|  | 27. | DIV 09 | Finishes |
| YES | 28. | 09010 | Interior Finishes Legend and Schedule |
| YES | 29. | 09111 | Non-Load-Bearing Steel Framing |
| YES | 30. | 09250 | Gypsum Board |
| YES | 31. | 09511 | Acoustical Panel Ceilings |
| YES | 32. | 09852 | Sound Absorbing Wall Units (As it relates to this scope of work) |
| YES | 33. | 09900 | Painting (As it relates to this scope of work) |
|  | 34. | DIV 10 | Specialties |
| YES | 35. | 10672 | Wire Shelving (As it relates to the blocking scope of work) |
| YES | 36. | 10801 | Toilet & Bath Accessories (As it relates to the blocking scope of work) |
|  | 37. | DIV 12 | Furnishings |
| YES | 38. | 12356 | Residential Casework (As it relates to the blocking scope of work) |
| YES | 39. | Other specification sections as they specifically relate to the work performed by this Subcontractor. | |
| YES | 40. | Where the words "Construction Manager", "General Contractor" or "Contractor" appear throughout the Contract Documents, including but not limited to the sections listed above, it shall mean this Subcontractor performing the Subcontract Work.  It is understood that the use of the acronym "LC" in this Exhibit stands for The Law Company, Inc. | |

### Part 2.  Scope of work to include, but is not limited to:

| YES | 1. | Subcontractor acknowledges the documents listed in Schedule B attached hereto.  The Law Company will provide one (1) CD containing these documents.  Subcontractor will be responsible for all costs to print any desired copies.  A hyperlink to download the same documents can also be made available. |
|---|---|---|
| YES | 2. | Subcontractor's specific scope of work as defined by the drawings and specifications include but is not limited to the following: |
|  | 3. | DIV 01 General Requirements |
| YES | 4. | 01715 Fire Rated Assemblies |
| YES | 5. | This subcontractor has reviewed and understands the details and assemblies required for compliance with this specification.  Framing, insulation and gyp board components of these assemblies installed by this subcontractor will be completed in a manner that allows following or coordinating subcontractors to efficiently and effectively complete their portions of the work |
|  | 6. | DIV 05 Metals |
| I | 7. | 05310 Steel Decking |
| I | 8. | All metal roof deck, accessories, sumps, etc. as required for complete installation |
| I | 9. | All required fasteners for installation of metal deck |
| I | 10. | Accepting, unloading and draying of metal deck |
| X | 11. | This subcontractor will repair any galvanized coatings damaged in the course of installing its work |
| O | 12. | Deck cut-outs for any penetrations by other trades |
| I | 13. | Air transfer cut-outs as indicated on roof plan |
| X | 14. | 05400 Cold Formed Metal Framing Complete |
| X | 15. | All tracks, studs, clips, deflection considerations, anchors, bracing, bridging, connectors, furring, etc. required for a complete installation per specifications and details |
| X | 16. | Shims or grout at load bearing bottom tracks per 3.1.A |

# EXHIBIT NO. 1
## Scope for: Framing/Drywall/Acoustic Ceilings/Blocking

| | | |
|---|---|---|
| X | 17. | All required sill sealers or gaskets per 3.1.B |
| X | 18. | All required bracing, temporary or permanent per 3.2.E |
| X | 19. | Coordinate and install insulation at areas that will be inaccessible once framing is complete per 3.2.G |
| X | 20. | This subcontractor understands the erection tolerances as described per 3.2.I, 3.5, etc. |
| X | 21. | Vertical framing members should be aligned across floors to transfer loads or plates need to be continuously reinforced per 3.3.D |
| X | 22. | Roof framing members should be aligned with vertical framing members to transfer loads or plates need to be continuously reinforced per 3.3.E |
| X | 23. | All metal blocking or backing as described in 3.3.H |
| X | 24. | All bridging as described in 3.3.I and 3.4.E, etc. |
| X | 25. | Non load bearing metal framing should be isolated from the structure as described in 3.4.D |
| X | 26. | Any testing is by others.  Any retesting of failed tests is by this subcontractor |
| X | 27. | Any costs borne by others in an effort to correct failed tests are by this subcontractor |
| X | 28. | This subcontractor will repair any galvanized coatings damaged in the course of installing its work |
| X | 29. | This subcontractor has read and understands all the structural general notes on S0.1, specifically "Light Gauge Framing" |
| YES | 30. | See 09111 section below for additional metal stud framing notes that may apply to structural cold formed framing |
| I | 31. | **05440 Cold Formed Metal Trusses Complete** |
| O | 32. | Full engineered design shop drawings and calcs per 1.2, 2.2A |
| YES | 33. | The design loads are as indicated on S0.1 |
| X | 34. | This subcontractor will repair any galvanized coatings damaged in the course of installing its work |
| X | 35. | Trusses will be braced or stiffened to accommodate delivery, handling and erection without damage to truss members per 2.8:B |
| X | 36. | All required bracing, temporary or permanent per 3.2.C, 3.2.I |
| X | 37. | All trusses should align with vertical framing members below or tracks continuously reinforced to transfer loads per 3.2.H |
| O | 38. | Any special inspections required per 3.3.A are by others |
| YES | 39. | This subcontractor has read and understands all the structural general notes on S0.0, specifically "Pre-Manufactured Trusses" |
| O | 40. | Trusses should be designed and built for catwalks as indicated |
| I | 41. | All truss attachment to supports is by this subcontractor, regardless of support materials |
| X | 42. | Blocking for eave brackets per 4/A3.5 |
| X | 43. | Framing for eave brackets per 4/A3.5, to be constructed of metal studs in lieu of wood. |
| X | 44. | Overbuild framing at roof valleys per A4.0 |
| YES | 45. | This subcontractor has read and understands all the structural general notes on S0.1, specifically "Pre-Engineered Trusses" |
| | 46. | **DIV 06 Wood & Plastics** |
| O | 47. | **06160 Wood Sheathing at Roof** |
| O | 48. | Wood roof sheathing is currently excluded from this agreement.  Installation of materials provided by others can be added for $XXX |
| X | 49. | All gyp sheathing materials are included herein |
| X | 50. | **06640 Plastic Paneling Complete** |
| X | 51. | All FRP paneling as required per plans and specs.  Exception: fire rated FRP is only available in white.  If colors are desired, it will not be fire rated. |
| X | 52. | **06 Rough Carpentry** |
| X | 53. | All required treated wood blocking concealed within metal stud framing for the support or attachment of trim, cabinets, handrails, toilet accessories, fixtures, etc. as shown on the drawings or described in the specifications. |
| | 54. | **DIV 07 Thermal & Moisture Protection** |

# EXHIBIT NO. 1
## Scope for: Framing/Drywall/Acoustic Ceilings/Blocking

| | | |
|---|---|---|
| X | 55. | **07210 Thermal Insulation** |
| X | 56. | All batts, blankets, board or acoustic insulation as described in part 2 |
| X | 57. | All accessories as required for proper installation of work herein |
| X | 58. | Blown attic insulation |
| O | 59. | Any insulation below concrete floor slab |
| X | 60. | Insulation baffles per 6/A3.4 |
| O | 61. | Exterior continuous rigid insulation is currently excluded from this agreement but can be added for $85,900 |
| | 62. | **07841 Firestop Sealants** |
| X | 63. | This subcontractor is responsible for firestop sealants only as required to complete the portion of the work included within this subcontract. It is not expected that this subcontractor will apply firestop sealants to penetrations through its work by other trades. It will ensure that framing, insulation or gyp materials installed herein will be completed in a manner that allows following or coordinating subcontractors to efficiently and effectively complete their portions of the work. *Work to be performed in a manner which other trades can successfully complete their fire sealants. This means that the gaps and interstitial spaces between materials installed by you and others* |
| O | 64. | This subcontractor will label all rated wall assemblies per the requirements of 3.2.A |
| O | 65. | Labeling of penetrations through rated assemblies is by others |
| | 66. | **07920 Joint Sealants** |
| X | 67. | Joint sealants required for the completion of this scope of work (i.e. below tracks, etc.) |
| O | 68. | All required fire sealants at perimeter of gyp board assemblies |
| X | 69. | All required acoustical sealants at perimeter of gyp board assemblies |
| O | 70. | Joint sealants in contact with stucco |
| | 71. | **DIV 08 Openings** |
| I | 72. | All hollow metal or steel door frames in metal stud framing |
| X | 73. | Dray of HM door frames installed herein from storage area to installation location |
| X | 74. | Unloading of door frames and storing upon delivery for frames installed herein |
| YES | 75. | This subcontractor will ensure that HM frames remain plumb, level and square throughout framing and gypboard activities for proper fitment of doors |
| I | 76. | Access doors and panels specifically shown on the contract documents |
| I | 77. | Access doors and panels not shown but required by other trades as long as properly coordinated ahead of this subcontractor's work. Doors and panels will be provided by those requiring them. |
| O | 78. | **08561 Vinyl Windows** |
| O | 79. | Installation of all vinyl windows |
| O | 80. | Dray of windows installed herein from storage area to installation location |
| O | 81. | Unloading of windows and storing upon delivery |
| | 82. | **DIV 09 Finishes** |
| X | 83. | **09010 Interior Finishes Legend and Schedule** |
| X | 84. | This subcontractor has reviewed and understands the requirements of this section including any references and how they apply to the work described herein |
| | 85. | **09111 Non-Structural Metal Framing** |
| X | 86. | All firestop tracks per 2.2.D, 3.2.4, etc. |
| X | 87. | All studs, tracks, straps, backing, bridging, hats, furring, resilient channels, etc. required for complete installation per 2.2 |
| X | 88. | All gyp board suspension systems per 2.3, 3.3, etc. |
| X | 89. | All suspension wires required for installation herein. Wires are not to be attached to steel deck or composite deck. Wires shall not be splayed unless properly braced. |
| X | 90. | All seismic or sway bracing required |
| X | 91. | Isolation strips or gaskets as required per 2.4, 3.2.B, etc. |
| X | 92. | Blocking or backing per 3.1.B |
| X | 93. | All sound rating items as indicated or required per 3.2.D.5 |

Subcontract No. 7517-AJ

EXHIBIT A

# EXHIBIT NO. 1
## Scope for: Framing/Drywall/Acoustic Ceilings/Blocking

| | | |
|---|---|---|
| X | 94. | All interior brace wall details 5/S6.1 typ |
| X | 95. | All continuous closure angles per 11/S6.2, 3 & 4/S6.3 etc. |
| X | 96. | All elevator guide rail reinforcing per 7/S6.2 |
| X | 97. | All typical framing details S6.3 |
| X | 98. | Eave and soffit outriggers per 7/@6.3 |
| X | 99. | All stud framing related items for low roofs per 1, 2, 3/S6.4, 1, 2, 3/S6.5, etc. |
| X | 100. | 18ga Closure angles per 7/S6.6 |
| X | 101. | All stud framing details per S7.1, S7.2 |
| X | 102. | All hold-downs and anchors attached to metal studs |
| X | 103. | All catwalk "Flameblock" sheathing |
| X | 104. | All edge, soffit & eave hat channels, studs, clips, etc. per A4.1 |
| X | 105. | All Porte Cochere light gauge framing |
| X | 106. | All roof related treated wood blocking |
| X | 107. | All door, window, opening treated wood nailers and blocking |
| X | 108. | All continuous treated wood blocking for wire shelving |
| X | 109. | All continuous treated wood blocking for standing and running trim |
| X | 110. | All treated wood blocking for purse shelves, memory boxes, toilet accessories, grab bars, etc. |
| X | 111. | All ceiling expansion joints per 3/A6.5 |
| YES | 112. | This subcontractor has reviewed and understands the requirements of the partition schedule on A1.0 including the legend. |
| X | 113. | All metal stud framed partial height walls |
| I | 114. | All partial height wall reinforcement per 7/A8.8 |
| X | 115. | Column and wing wall framing including plywood for 4/A1.1 |
| X | 116. | Door pocket details 2/A1.3 |
| X | 117. | Fire blocking |
| X | 118. | All misc. framing and wood nailers at PTACS similar to 1 & 2/A3.4, 1 & 2/A3.6, etc. |
| X | 119. | All canopy metal stud framing |
| X | 120. | All 1 hour surrounds at first floor beams per 3/A3.1 typical |
| X | 121. | Infill detail 4/A3.1 |
| X | 122. | Framing for kitchen eyebrow per 2/A3.8 |
| X | 123. | This subcontractor has reviewed and understands all smoke and fire barrier details per A3.13 |
| X | 124. | Framing at eave details per A4.1 |
| | 125. | All bottom plate attachments per 4/S5.1, 1/S6.1, etc. |
| X | 126. | Vertical mullion job built framing at vinyl windows per 15/A5.7 typical |
| X | 127. | All curved soffit framing |
| X | 128. | Typical blocking for casework 7/A8.5 |
| X | 129. | Reception low wall framing per 4 & 5/A8.5 |
| | 130. | **09250 Gypsum Board** |
| X | 131. | All interior, exterior, tile backing, moisture resistant, sheathing or other gypsum based panels as required per Part 2 and drawings |
| X | 132. | Sound batts per 2.11.C |
| X | 133. | Acoustic sealant per 2.10.D |
| X | 134. | Acoustic putty pads per 2.11.E, 3.2 |
| X | 135. | All drywall finishing and texturing |
| X | 136. | All drywall finishes per 3.1.H |
| X | 137. | All gyp sheathing per 3.3 |
| X | 138. | Moisture resistant gyp board in Kitchen 504 per 3/A1.9 |
| X | 139. | Additional layer of gyp board per 3/A1.11 |
| YES | 140. | This subcontractor has reviewed the ceiling legend on A6.1-A6.8 |
| X | 141. | All ceiling control joints per Note 3/A6.1 |

EXHIBIT A

# EXHIBIT NO. 1

## Scope for: Framing/Drywall/Acoustic Ceilings/Blocking

| | | |
|---|---|---|
| X | 142. | **09511 Suspended Acoustical Ceilings Complete** |
| X | 143. | All moldings, runners, tees, hangers, clips required for complete installation |
| X | 144. | All acoustic panels per specification and finish schedule |
| X | 145. | Moisture resistant lay-in ceiling panels per specification and finish schedule |
| X | 146. | Extra ceiling wires attached to grid at light fixture and HVAC diffuser locations |
| X | 147. | Extra wires attached to light fixtures or HVAC diffusers will be provided and attached to supporting structure by this subcontractor as long as properly coordinated in advance by the requiring party. Attachment to fixtures is by others. |
| | 148. | |
| | 149. | **General Items:** |
| YES | 150. | Time and Material work when directed by LC shall be performed at the labor rates as described in part 6 of this exhibit. |
| YES | 151. | These labor rates include payroll, taxes and insurance. There shall be no additional charges above these rates. |
| YES | 152. | When additional work is to be performed by this Subcontractor on a Time and Material (T & M) basis, signed daily tickets will be issued for each day's work to The Law Company's Project Superintendent. Extra work must be approved by LC's Project Manager prior to starting any extra work. |
| YES | 153. | Change Order Materials: Cost Plus 10% unless specifications or the Prime Contract show less. All Change Order Requests must include a breakdown of materials and labor, an explanation of the work and which plans and/or specifications are affected. Subcontractor is responsible for all sales and use taxes not specifically excluded. |
| X | 154. | All hoisting required to unload, stage or install materials and perform Subcontractor's work. |
| X | 155. | All scissor or boom lifts operated on top of finished concrete will have non-marring tires and leak protection diapers installed. |
| X | 156. | All dust control required or necessitated by work identified herein shall be provided by this Subcontractor. |
| X | 157. | All General Notes in the Contract Documents that apply to the Subcontractor's scope of work are included. |
| X | 158. | Phasing and sequencing is per LC's Project schedule. Work will occur concurrent in more than one area at a time during the Project. This Subcontractor is to provide adequate manpower to conform to the Project schedule. |
| YES | 159. | The Law Company will provide temporary project fencing around the site. Any required shifting or disturbance to the fence required by this Subcontractor for completion of work included herein shall be completed and replaced at the end of the shift by the Subcontractor. Any additional barricades or protection required to safely complete this Subcontractor's work shall be provided by this Subcontractor. |
| YES | 160. | All Subcontract Work shall be in strict accordance with the requirements set forth by the Contract Documents (plans & specifications) and in accordance with any applicable manufacturer's instructions and requirements. |
| YES | 161. | Follow all LC rules, procedures and safe construction practices when welding, grinding or performing tasks that would create sparks. Subcontractor is responsible to protect the building from fire when performing work related to this Subcontract. |
| YES | 162. | Subcontractor understands and agrees that all alternates and unit prices shall include all required insurance costs and overhead and profit and are for the life of the project. |
| YES | 163. | Subcontractor will guarantee all Subcontract Work for one (1) year unless a longer period is required by specifications. |

## Part 3. Other Items Included, But Not Limited To:

| | | |
|---|---|---|
| YES | 1. | For clarification purposes only, the Subcontract Work shall include, but shall not be limited to, the following special notes: |
| YES | 2. | Retainage (10%) |

Subcontract No. 7517-AJ

Approved:   For Contractor ___M___          For Subcontractor ___CC___

EXHIBIT A

# EXHIBIT NO. 1
## Scope for: Framing/Drywall/Acoustic Ceilings/Blocking

| | | |
|---|---|---|
| YES | 3. | Insurance certificate (as required by the Contract Documents) shall be on file prior to the starting of any Subcontract Work on this Project. |
| YES | 4. | The Building Permit for the overall Project shall be obtained by The Law Company. It is understood that this Subcontractor shall be responsible for all other required permits, fees, licenses, certificates, etc. required for the scope of the Subcontract Work herein. This Subcontractor shall provide to The Law Company copies of all such documents if requested to do so. |
| YES | 5. | 100% Payment and Performance Bonds |
| YES | 6. | Schedule of Values: A Complete Breakdown as required by The Law Company and the Contract Documents will be provided within ten (10) days after the date of this agreement. Every definable feature shall contain separate lines for each "Material" and "Labor." Each shall be billed on a percent complete basis. |
| YES | 7. | All billings and payments will be per the Contract Documents and The Law Company's Subcontract. Billings sent on an "invoice" will not be acceptable. Only standard AIA billing procedures are acceptable. The billing period runs from the 1st to the last day of the month. All billings are due in The Law Company Wichita office by the 21st of the month projecting to the end of the month. |
| YES | 8. | Subcontractor is fully aware of the requirements for any "stored material" billings and will fully comply with all requirements of the Contract Documents. No materials shall be stored within the building. Subcontractor must provide its own storage trailer, placing of trailer must be coordinated with LC's superintendent. |
| YES | 9. | Lien Waivers per the Contract Documents. |
| YES | 10. | As-Built drawings updated weekly on The Law Company's jobsite record plans and specifications. Failure to timely perform can be cause to hold progress payments. |
| YES | 11. | As-built drawings and as-built shop drawings are required per the General Conditions of the Contract Documents and are part of this Agreement. Submit all close-out documents, as-built submittals and final as-built drawings to the jobsite office in PDF form for the Owner's record file. |
| YES | 12. | Quality control, testing, permits, licenses, and certifications required for scope of the Subcontract Work herein. This Subcontractor shall be responsible for all required on-site & off-site Quality Control to ensure compliance with the Contract Documents and local governing authorities. |
| YES | 13. | Testing costs shall be paid by the others, but this Subcontractor shall be responsible for payment of any re-testing required due to improper quality control per specification section 01400. |
| YES | 14. | Incidental labor and facilities for testing personnel to access and perform all testing on all work installed by this Subcontractor (ladders, lifts, foreman, etc.). |
| YES | 15. | All prices, unit prices, and quotations in the Subcontract, Change Orders, or Purchase Orders shall be for the life of the Subcontract or Purchase order unless noted otherwise. |
| YES | 16. | All freight shall be F.O.B. jobsite and prepaid. |
| YES | 17. | All removal and replacement of existing materials required to complete the Subcontract Work including, but not limited to, cutting, patching, temporary support of areas to be cut and patched, and protection of adjacent areas to be cut and patched. |
| YES | 18. | Subcontractor will maintain complete and thorough protection from the hazards being created within its work area. Subcontractor will take special care to ensure no staining or damage occurs to previously completed work. This Subcontractor will protect any finished surfaces during the execution of any work by this Subcontractor. |
| YES | 19. | Subcontractor shall perform work in accordance with all safety requirements set forth by any applicable governing authorities including OSHA and The Law Company Safety Plan. |
| YES | 20. | All trenching and excavation to be in compliance with OSHA rules and regulations. |
| YES | 21. | All required SDS information and Subcontractor Safety Program Manuals to be provided to The Law Company's Jobsite Superintendent within seven (7) calendar days of the date of this Subcontract. Subcontractor understands that all workers and visitors on this project will wear the applicable PPE as directed by The Law Company Superintendent and Jobsite Safety Plan. At minimum this will include hard hats, hard soled work boots, long pants and sleeved shirts. |

Subcontract No. 7517-AJ

Approved: For Contractor ___   For Subcontractor ___

EXHIBIT A

# EXHIBIT NO. 1
### Scope for: Framing/Drywall/Acoustic Ceilings/Blocking

| | | |
|---|---|---|
| YES | 22. | Subcontractor will hold weekly safety meetings and provide reports of these meetings, including sign-in sheets, to The Law Company Superintendent prior to the end of each week. Failure to provide adequate weekly safety meeting reports while this Subcontractor is working on-site will be cause to hold progress payments. |
| YES | 23. | The electrical subcontractor will provide temporary power and lighting per minimum OSHA requirements. All power and lighting in excess of this, which may be required to properly complete work herein, is to be provided by this Subcontractor. |
| YES | 24. | Subcontractor shall remove all trash & debris on a daily basis resulting from this Subcontractor's Work. All debris must be constantly controlled and not allowed to blow outside the Project limits. All areas of work will be cleaned-up and made safe by 5:00 PM every day or at the end of each work shift. The Law Company does not desire to, but will arrange for clean-up on this Subcontractor's behalf if this Subcontractor fails to initiate its own efforts within 24 hours of being directed to do so. All costs for such actions will be the sole responsibility of this Subcontractor. |
| YES | 25. | The Owner and The Law Company must approve all Signage/Advertising desired by this Subcontractor. At this time no signage is allowed. |
| YES | 26. | Anchors, blocking, fasteners and other items not provided by Owner necessary for the completion of the Subcontract Work. |
| YES | 27. | All coordination, clarifications, discrepancies, etc., shall be submitted to The Law Company, Inc.'s jobsite office in written form. |
| YES | 28. | Subcontractor understands that alcohol, drugs, fire arms and ammunition are not allowed on this site. Smoking is not allowed within 25 feet of any structure or any flammable materials. Smokeless tobacco is not allowed inside any structure or on any concrete surface. Violators will be required to leave the Project and not return. Subcontractor shall comply with requirements of Owner, The Law Company, Inc., and other governing authorities relative to this issue. |
| YES | 29. | Subcontractor understands that the Owner has the right to object to any subcontractor or vendor. This agreement is contingent upon the Owner's approval of this Subcontractor. Should the Owner object to this Subcontractor for any reason, this agreement is null and void and each party shall bear its own expense. |
| YES | 30. | Dumpsters will be ordered and paid for by The Law Company. Jobsite rules requires recycling where possible. Specific dumpsters will be provided for this purpose. Subcontractor is required to sort recyclable trash and place in designated dumpsters and may not place any recyclable materials in other dumpsters. Any subcontractor that contaminates a recycle dumpster will be responsible for all resulting costs. Paints, adhesives, epoxies, etc. are considered hazardous materials and will not be allowed to be placed in the jobsite dumpsters and must be removed from the jobsite by this Subcontractor. |
| YES | 31. | Subcontractor shall be responsible for its own temporary offices, sheds, storage or other equipment and associated utility expenses that may be required to complete the work herein and will remove same upon completion. Location of all temporary facilities requires the approval of The Law Company. |
| YES | 32. | Subcontractor shall perform field measurement verification as required for proper execution of scope of work herein. |
| YES | 33. | Parking will be in approved contractor parking locations only. The Law Company's Superintendent will designate these areas. Subcontractor may not block the operational activity (customers or deliveries) of the property. This Subcontractor is responsible for transportation of employees, equipment, and materials to and from offsite storage and parking areas as required. |
| YES | 34. | All required utility service shutdowns including water, gas, sewer, HVAC, electrical, fire alarm, fire sprinkler, telephone, cable or Internet systems shall be scheduled with The Law Company a minimum of 7 days in advance of shutdown. Subcontractor shall be responsible for coordinating any utility shutdowns with local utility companies where required for completion of its work. |

EXHIBIT A

# EXHIBIT NO. 1
## Scope for: Framing/Drywall/Acoustic Ceilings/Blocking

| | | |
|---|---|---|
| YES | 35. | Subcontractor shall assign, at a minimum, one full time supervisor dedicated to this Project who will be on the Project at all times the Subcontractor is performing work.  More than one supervisor may be required depending on the scope of work included herein.  Subcontractor's supervisor must meet the following requirements:<br>• Be a direct employee of this Subcontractor.<br>• Attend daily and weekly coordination meetings as scheduled by The Law Company.<br>• Have the authority to represent and act on behalf of Subcontractor regarding safety, production, quality and other matters pertaining to the Subcontract Work.<br>• For communication and safety reasons, Subcontractor's supervisor must be fluent in the English language.<br>• Be directly responsible for any of this Subcontractor's 2nd tier subcontractors and material suppliers.<br>Subcontractor shall replace its supervisor within 48 hours of written notice from The Law Company that its current supervisor does not meet the above requirements. |
| YES | 36. | Subcontractor will provide to the Project Superintendent a daily report each day worked indicating areas of work, man count, critical materials delivered and other such information as required.  This report shall be provided before the end of business on the same day. |
| YES | 37. | Subcontractor recognizes that time is of the essence in this agreement and further recognizes that Subcontractor shall be liable for all damages arising out of any failure to perform the work in accordance with terms and provisions of this agreement.  This Project will have a construction schedule and each phase of construction is outlined.  The schedule must be reviewed by the Subcontractor and performance established to meet the set schedule. |
| YES | 38. | Standard Jobsite work days and hours will be set by The Law Company's Superintendent.  The following items apply to time that must be worked outside of these standard hours: |
| YES | 39. | Should overtime be required due to this Subcontractor's failure to provide adequate manpower, materials or equipment to maintain the Project schedule, this Subcontractor shall be required to provide all required extra efforts at no additional cost and shall also be required to compensate The Law Company for additional costs jobsite supervision, observation, testing, etc.  The intent is to maintain the schedule with adequate resources to avoid premium costs due to overtime.  Subcontractor is responsible to provide adequate manpower to perform the assigned work in the scheduled time as directed by the Project Superintendent to meet the Project schedule.  If Subcontractor fails, it must work additional hours at its own expense to catch up to the required schedule. |
| YES | 40. | Additional work hours needed or any make-up days needed for lost time on the schedule due to weather or actions by this Subcontractor will be coordinated with The Law Company Superintendent at least 48 hours in advance. Work performed other than during established work days and hours must be approved by The Law Company's Superintendent. Subcontractor will be responsible for costs incurred by The Law Company for supervision of Subcontractor's make-up time due to its failure to meet schedule. |
| YES | 41. | This Subcontractor will attend all pre-phase or pre-installation conferences as scheduled by The Law Company. Subcontractor will be represented by its on-site supervisor and its project manager. |
| YES | 42. | The Subcontractor's  on-site supervisor will attend daily coordination meetings as scheduled by The Law Company's Superintendent whenever this Subcontractor is working on site. |
| YES | 43. | The Subcontractor's project manager and on-site supervisor will attend weekly progress review meetings beginning two weeks prior to the start of its work and continuing until all of this Subcontractor's work is complete and accepted. |
| YES | 44. | This Subcontractor will coordinate and schedule all testing and inspections in a timely manner to maintain the Project schedule.  Subcontractor recognizes and will be responsible for costs associated with inspections that have to be conducted other than normal work days and hours. |
| YES | 45. | Subcontractor shall take all necessary precautions to protect new building components and property.  Costs associated with the replacement or corrections of damaged work due to this Subcontractor's actions or inactions will be the responsibility of this Subcontractor. |

EXHIBIT A

# EXHIBIT NO. 1
## Scope for: Framing/Drywall/Acoustic Ceilings/Blocking

| | | |
|---|---|---|
| YES | 46. | This Subcontractor shall be held responsible for the cleaning of mud or track-out from any streets caused by its Subcontract Work. Access to the site will be through a properly constructed construction entrance and vehicle tracking control (VTC) pad. |
| YES | 47. | All coordination, clarifications, discrepancies, etc., shall be submitted to The Law Company's jobsite office in written form via the "RFI" (Request For Information) format and process. All communication by this Subcontractor will be through The Law Company Superintendent and Project Manager and shall not be directly with any member of the Owner, Owner's Representative, or the design or engineering firms. Work performed without proper coordination and written direction via The Law Company shall be considered to be performed at this Subcontractor's risk. This Subcontractor shall be held responsible for any and all subsequent costs incurred by this Subcontractor or others. |
| YES | 48. | All changes shall be submitted in accordance with the requirements of the Contract Documents. Subcontractor's proposal shall be limited to Overhead & Profit of 10% per the Contract Documents. Proper proposals responding to change requests shall be provided within five (5) working days of the receipt of request. If Subcontractor fails to perform in a timely fashion, Subcontractor herein agrees to proceed with changes as directed by The Law Company for the value as determined solely by The Law Company. All proposals are to include all costs required to maintain the current Project schedule. No time extensions will be allowed unless the documents provided by The Law Company to Subcontractor specifically indicate that the change in question will allow for time extension. Lack of this specific direction shall be interpreted to mean the change in question will not allow any time extension. |
| YES | 49. | Subcontractor understands all requirements of the General Conditions regarding substitutions and further understands that Subcontractor will be responsible for all costs, schedule impacts or other results of substitutions proposed by this Subcontractor. |
| YES | 50. | Any delays to the Project schedule or increased costs to The Law Company or other subcontractors caused by delay in submittal approval due to late submission, un-approvable submittals or deviations from the Contract Documents shall be the responsibility of this Subcontractor. |
| YES | 51. | It is the intent of this Agreement that the Subcontractor shall provide complete and fully functional and operational systems for this project as it relates to the contracted work of this Subcontractor per the Contract Documents and all applicable codes and standards. |
| YES | 52. | All deliveries are required to be scheduled with The Law Company and be placed only in designated staging area. Subcontractor to provide and utilize lockable storage trailer whenever possible and practical for materials provided, or responsible for, in execution of this Subcontract. Staging area must be kept clean and organized, all trash and pallets to be removed daily. |
| YES | 53. | This Subcontractor shall provide coordination, materials and installation of all embeds, sleeves, block-outs, inserts, core-drilling, holes, penetrations etc. required for work herein. The completion of same including, but not limited to, escutcheons, closure materials, caulking, fire-stopping or fire rated sealants shall be by this Subcontractor. |
| YES | 54. | Submittals shall clearly identify the applicable specification section and any deviations in the submittal information from the Contract Documents. |
| YES | 55. | Submission of substitute materials or manufacturers shall clearly be noted and submitted per the requirements of the Contract Documents. Any delay or lost time due to substitutes shall be the sole responsibility of this Subcontractor. |
| YES | 56. | Subcontractor agrees to execute and return all Subcontract documents within ten (10) calendar days of receipt, to confirm Subcontractor's acceptance of the Subcontract agreement. If Subcontractor fails to return the executed Subcontract agreement or fails to object in writing to any terms or conditions of the Subcontract agreement within the ten (10) day period, The Law Company shall deem for all intents and purposes that Subcontractor has accepted the Subcontract agreement as written. |

Subcontract No. 7617-AJ

Approved: For Contractor _MJ_   For Subcontractor _CC_

EXHIBIT A

# EXHIBIT NO. 1
## Scope for: Framing/Drywall/Acoustic Ceilings/Blocking

| | | |
|---|---|---|
| YES | 57. | All guarantees and warranties will be per the Contract Documents and with the warranty period beginning at the date of substantial completion as issued by the Owner.  Disclaimers or Limitations stipulated by the Subcontractor or Subcontractor's suppliers will not be allowed to change the requirements of the Contract Documents.  All guarantees and warranties will be provided during the submittal process for review and approval of format and content.  Failure to provide timely is cause for The Law Company to withhold progress payments until obligation is fulfilled. |
| YES | 58. | Subcontractor understands that permanent systems may be utilized as they become available if in the best interest of the overall Project.  The above guarantee and warranty requirements will remain in place. |
| YES | 59. | Subcontractor will provide O & M's as required by the Contract Documents.  These shall be provided as soon as possible but no later than 30 days after approval of associated submittals and shop drawings.  Failure to provide timely is cause for The Law Company to withhold progress payments until obligation is fulfilled. |

## Part 4.  Submittal Requirements:

| | | | |
|---|---|---|---|
| YES | | Shop Drawing and submittal data should be submitted to the Jobsite Office in electronic form to Brian Siefker at Siefker@law-co.com | |
| YES | | Samples should be submitted in triplicate to the jobsite office | |
| YES | | Subcontractor will provide a list of intended 2nd tier subcontractors to The Law Company no later than 5 days after this Subcontract is issued.  The values of these 2nd tier subcontracts should be listed on the schedule of values. | |
| | | **Description** | **Submittals to Law Company** | **Fab & Deliver (After Approval)** |
| YES | 1. | Metal Stud Assemblies | December 9th, 2016 | 1 Week |
| YES | 2. | Cold Formed Metal Trusses | December 23rd, 2016 | 8-10 Weeks |
| YES | 3. | Insulation | December 9th, 2016 | 1 Week |
| YES | 4. | Gyp Board | December 9th, 2016 | 1 Week |
| YES | 5. | Acoustic Ceilings | December 9th, 2016 | 1 Week |
| YES | 6. | | | |

## Part 5.  Performance Duration Requirements:

| | | **Description** | **Installation** |
|---|---|---|---|
| YES | 1. | 1st Floor Framing | 5-6 Weeks |
| YES | 2. | 2nd Floor Framing | 5-6 Weeks |
| YES | 3. | Metal Roof Trusses & Metal Deck | 6 Weeks |
| YES | 4. | Exterior Sheathing | 4 Weeks |
| YES | 5. | 1st Floor Insulation | 2 Weeks |
| YES | 6. | 2nd Floor Insulation | 2 Weeks |
| YES | 7. | 1st Floor Gypboard | 6 Weeks |
| YES | 8. | 2nd Floor Gypboard | 6 Weeks |
| YES | 9. | Attic Insulation | 2 Weeks |
| YES | 10. | 1st Floor Acoustic Ceiling Grid | 10 Days |
| YES | 11. | 2nd Floor Acoustic Ceiling Grid | 10 Days |
| YES | 12. | 1st Floor Acoustic Ceiling Tile | 10 Days |
| YES | 13. | 2nd Floor Acoustic Ceiling Tile | 10 Days |
| YES | 14. | FRP Panels | 10 Days |
| | 15. | | |

Subcontract No.  7517-AJ

Approved:  For Contractor  _____          For Subcontractor  _CC_____

EXHIBIT A

# EXHIBIT NO. 1
## Scope for: Framing/Drywall/Acoustic Ceilings/Blocking

### Part 6.  Cost of Work:

| | | |
|---|---|---|
| 1. | All pricing includes all applicable insurance costs | |
| 2. | All pricing includes adherence to Project schedule as described above | |
| 3. | | |
| 4. | Framing, Drywall, Insulation, Sheathing, Ceilings, FRP, etc. | $1,794,100 |
| 5. | Tape & Finish Drywall | $190,500 |
| 6. | Texture Drywall | $118,400 |
| 7. | Install Metal Roof Deck | $37,500 |
| 8. | All Wood Blocking | $77,500 |
| 9. | Furnish CFM Trusses | $235,000 |
| 10. | Material Sales Taxes of 4.00% (4.15% has already been paid as part of the permit) | Included |
| 11. | Subtotal | $2,453,000 |
| 12. | Payment & Performance Bonds @ 2.5% | $61,325 |
| 13. | Total Subcontract Amount | $2,514,325 |
| 14. | | |
| 15. | Alternate Pricing | |
| 16. | Furnish & Install Exterior Continuous Insulation | $85,900 |
| 17. | Install ¾" Wood Roof Sheathing | $62,000 |
| 18. | | |
| 19. | Labor Rates | |
| 20. | Laborer | $25/HR |
| 21. | Framer, Hanger | $35/HR |
| 22. | Finisher | $45/HR |
| 23. | Foreman | $65/HR |

Subcontract No.  7517-AJ

Approved:  For Contractor ⟍⟍⟋      For Subcontractor ⟍⟍

EXHIBIT A

# Schedule B
## Updated 18nov16

The attached described Plans, Specifications and other Contract Documents shall be fully complied with by Subcontractor in the performance of **Subcontract No. 7517-AJ**, attached hereto.  It is understood that in the event of any subsequent amendment to or change in any of these Drawings, Specifications or other Contract Documents, such amendments or changes shall be deemed to be included in this Schedule B upon their receipt by Subcontractor.  In the event any such amendments or changes increase or decrease the scope of the Subcontract Work, the provisions of §15 of the Subcontract shall apply.  Subcontractor shall be responsible to assure that all drawings utilized by its forces for the performance of the Subcontract Work include all amendments and/or changes which Subcontractor has received.

**Project:**          **The Legend at Broomfield**
                 **Broomfield, CO**

**Contract Date:**   **July 12, 2016**

**Owner:**           **DEN ALF 1, LLC c/o Legend Senior Living**

**Architect:**       **LK Architecture, Inc.**

Subcontractor acknowledges receipt of the Plans, Specifications and other Contract Documents through CCD2, Delta 2 revisions dated 18nov16 listed in this Schedule B consisting of 10 pages.

This Page Approved:

THE LAW COMPANY, INC. (Contractor)          CRC Construction Consulting, LLC
                                   (Subcontractor)

By:   Rob Davis, Project Manager          By:  Casey Caldwell, President

EXHIBIT A

# SCHEDULE B - CONSTRUCTION DOCUMENTS

PROJECT: THE LEGEND AT BROOMFIELD, BROOMFIELD, COLORADO                    11/18/2016

CONTRACTOR: THE LAW COMPANY, INC.

| SHEET NO. | SHEET TITLE | For Permit & Bidding | Bldg. Specs Revisions | CCD1, Delta 1 City/County Comments | CCD2, Delta 2 | NOTES |
|---|---|---|---|---|---|---|
| | | **REVISION DATES** | | | | |
| | | 9/16/16 | 10/24/16 | 10/31/16 | 11/18/16 | |
| | **LK ARCHITECTURE Plans** | | | | | |
| CVR | Cover Sheet | X | | X | X | |
| G1.1 | First Floor Code Plan Code | X | | X | | |
| G1.2 | Second Floor Code Plan Code | X | | | | |
| G1.3 | U.L. Assemblies | X | | | | |
| G1.4 | U.L. Assemblies | X | | | | |
| G1.5 | U.L. Assemblies | X | | | | |
| G1.6 | U.L. Assemblies | X | | | | Stamped 09/21/16 |
| G1.7 | U.L. Assemblies | X | | | | Stamped 09/21/16 |
| G1.8 | U.L. Assemblies | X | | | | Stamped 09/21/16 |
| | | | | | | |
| | **CIVIL by JEHN ENGINEERING** | | | | | |
| 01 of 22 | Cover Sheet | X | | | | Dated 08/26/16 |
| 02 of 22 | General Notes | X | | | | Dated 08/26/16 |
| 03 of 22 | Site Plan | X | | | | Dated 08/26/16 |
| 4 of 22 | Signing and Striping Plan | X | | | | Dated 08/26/16 |
| 5 of 22 | Overall Utility Plan | X | | | | Dated 08/26/16 |
| 6 of 22 | Area Drain Plan | X | | | | Dated 08/26/16 |
| 7 of 22 | Overall Grading Plan | X | | | | Dated 08/26/16 |
| 8 of 22 | Detailed Grading Plan North | X | | | | Dated 08/26/16 |
| 9 of 22 | Detailed Grading Plan South | X | | | | Dated 08/26/16 |
| 10 of 22 | Detailed Courtyard Grading Plan | X | | | | Dated 08/26/16 |
| 11 of 22 | Detailed Grading Plan Pond | X | | | | Dated 08/26/16 |
| 12 of 22 | Storm Drain - Profile 1 | X | | | | Dated 08/26/16 |
| 13 of 22 | Storm Drain - Profile 2 | X | | | | Dated 08/26/16 |
| 14 of 22 | Sanitary Sewer Plan & Profile | X | | | | Dated 08/26/16 |
| 15 of 22 | Overall Water Plan | X | | | | Dated 08/26/16 |
| 16 of 22 | Waterline Profile | X | | | | Dated 08/26/16 |
| 17 of 22 | Erosion Control Plan | X | | | | Dated 08/26/16 |
| 18 of 22 | Erosion Control Details 1 | X | | | | Dated 08/26/16 |
| 19 of 22 | Erosion Control Details 2 | X | | | | Dated 08/26/16 |
| 20 of 22 | Detail Sheet 1 | X | | | | Dated 08/26/16 |
| 21 of 22 | Detail Sheet 2 | X | | | | Dated 08/26/16 |
| 22 of 22 | Detail Sheet 3 | X | | | | Dated 08/26/16 |
| | | | | | | |
| | **SITE** | | | | | |
| LP1.1 | Landscape Plan, Legend & Irrigation Notes | X | | | | |
| LP1.2 | Landscape Planting Plan & Planting Details | X | | | | |
| LP1.3 | Landscape Planting Plan, Schedules & Planting Details | X | | | | |
| LP1.4 | Landscape Notes & Planting Details | X | | | | |
| | | | | | | |
| SA1 | Site Architectural Plan | X | | | | |
| SA1.0 | Site Architectural Details | X | | | | |
| SA1.1 | Site Architectural Details | X | | | | |

EXHIBIT A

# SCHEDULE B - CONSTRUCTION DOCUMENTS

PROJECT:  THE LEGEND AT BROOMFIELD, BROOMFIELD, COLORADO                11/18/2016

CONTRACTOR:  THE LAW COMPANY, INC.

| SHEET NO. | SHEET TITLE | For Permit & Bidding | REVISION DATES | | | NOTES |
|---|---|---|---|---|---|---|
| | | | Bldg. Specs Revisions | CCD1, Delta 1 City/County Comments | CCD2, Delta 2 | |
| | | 9/16/16 | 10/24/16 | 10/31/16 | 11/18/16 | |
| SA1.2 | Site Architectural Details | X | | | | |
| | | | | | | |
| | **STRUCTURAL** | | | | | |
| S0.1 | General Notes | X | | | | |
| S0.2 | Schedules & Typical Details | X | | | | |
| S0.3 | Schedules & Typical Details | X | | | | |
| S1.0 | Overall Pier Plan | X | | | | |
| S1.1 | Pier Plan - SW Area | X | | | | |
| S1.2 | Pier Plan - SE Area | X | | | | |
| S1.3 | Pier Plan - NE Area | X | | | | |
| S1.4 | Pier Plan - NW Area | X | | | | |
| S2.0 | Overall Foundation Plan | X | | | | |
| S2.1 | Foundation Plan - SW Area | X | | | | |
| S2.2 | Foundation Plan - SE Area | X | | | | |
| S2.3 | Foundation Plan - NE Area | X | | | | |
| S2.4 | Foundation Plan - NW Area | X | | | | |
| S3.0 | Overall Second Floor Framing Plan | X | | | | |
| S3.1 | Second Floor Framing Plan - SW Area | X | | | | |
| S3.2 | Second Floor Framing Plan - SE Area | X | | | | |
| S3.3 | Second Floor Framing Plan - NE Area | X | | | | |
| S3.4 | Second Floor Framing Plan - NW Area | X | | | | |
| S4.0 | Overall Roof Framing Plan | X | | | | |
| S4.1 | Roof Framing Plan - SW Area | X | | | | |
| S4.2 | Roof Framing Plan - SE Area | X | | | | |
| S4.3 | Roof Framing Plan - NE Area | X | | | | Listed on CVR Index as NW |
| S4.4 | Roof Framing Plan - NW Area | X | | | | Listed on CVR Index as NE |
| S5.1 | Foundation Sections | X | | | | |
| S5.2 | Foundation Sections | X | | | | |
| S6.1 | Framing Sections | X | | | | |
| S6.2 | Framing Sections | X | | | | |
| S6.3 | Framing Sections | X | | | | |
| S6.4 | Framing Sections | X | | | | |
| S6.5 | Framing Sections | X | | | | |
| S6.6 | Framing Sections | X | | | | |
| S7.1 | Brace Wall Details | X | | | | |
| S7.2 | Brace Wall Details | X | | | | |
| | | | | | | |
| | **ARCHITECTURAL** | | | | | |
| A0.1 | First Floor Plan | X | | | | |
| A0.2 | Second Floor Plan | X | | | | |
| | | | | | | |
| AD1.1 | Enlarged First Floor Dimension Plan - SW Area | X | | | | |
| AD1.2 | Enlarged First Floor Dimension Plan - SE Area | X | | | | |
| AD1.3 | Enlarged First Floor Dimension Plan - NE Area | X | | | | |

## SCHEDULE B - CONSTRUCTION DOCUMENTS

PROJECT:  THE LEGEND AT BROOMFIELD, BROOMFIELD, COLORADO                                      11/18/2016

CONTRACTOR:  THE LAW COMPANY, INC.

| SHEET NO. | SHEET TITLE | For Permit & Bidding | Bldg. Specs Revisions | CCD1, Delta 1 City/County Comments | CCO2, Delta 2 | NOTES |
|---|---|---|---|---|---|---|
| | | 9/16/16 | 10/24/16 | 10/31/16 | 11/18/16 | |
| AD1.4 | Enlarged First Floor Dimension Plan - NW Area | X | | | | |
| AD1.5 | Enlarged Second Floor Dimension Plan - SW Area | X | | | | |
| AD1.6 | Enlarged Second Floor Dimension Plan - SE Area | X | | | | |
| AD1.7 | Enlarged Second Floor Dimension Plan - NE Area | X | | | | |
| AD1.8 | Enlarged Second Floor Dimension Plan - NW Area | X | | | | |
| | | | | | | |
| AF1.1 | Enlarged First Floor Partition Plan - SW Area | X | | | | |
| AF1.2 | Enlarged First Floor Partition Plan - SE Area | X | | | | |
| AF1.3 | Enlarged First Floor Partition Plan - NE Area | X | | | | |
| AF1.4 | Enlarged First Floor Partition Plan - NW Area | X | | | | |
| AF1.5 | Enlarged Second Floor Partition Plan - SW Area | X | | | | |
| AF1.6 | Enlarged Second Floor Partition Plan - SE Area | X | | | | |
| AF1.7 | Enlarged Second Floor Partition Plan - NE Area | X | | | | |
| AF1.8 | Enlarged Second Floor Partition Plan - NW Area | X | | | | |
| | | | | | | |
| A1.0 | Partition Types | X | | | | |
| A1.1 | Enlarged First Floor Plan - SW Area | X | | | | |
| A1.2 | Enlarged First Floor Plan - SE Area | X | | | | |
| A1.3 | Enlarged First Floor Plan - NE Area | X | | | | |
| A1.4 | Enlarged First Floor Plan - NW Area | X | | | | |
| A1.5 | Enlarged Second Floor Plan - SW Area | X | | X | | |
| A1.6 | Enlarged Second Floor Plan - SE Area | X | | | | |
| A1.7 | Enlarged Second Floor Plan - NE Area | X | | | | |
| A1.8 | Enlarged Second Floor Plan - NW Area | X | | | | |
| A1.9 | Enlarged Kitchen Plans | X | | | | |
| A1.10 | Enlarged Floor Plans | X | | | | |
| A1.11 | Enlarged Unit Plans | X | | | | |
| A1.12 | Enlarged Unit Plans | X | | | | |
| A1.13 | Enlarged Unit Plans | X | | | | |
| A1.14 | Enlarged Unit Bathroom Plans | X | | | | |
| A1.15 | Kitchen & Theater Plans | X | | | | |
| A2.1 | Exterior Elevations | X | | | | |
| A2.2 | Exterior Elevations | X | | | | |
| A2.3 | Exterior Elevations | X | | | | |
| A2.4 | Exterior Elevations | X | | | | |
| A2.5 | Exterior Elevation Details | X | | | | |
| A3.1 | Building Sections | X | | | | |
| A3.2 | Building Sections | X | | | | |
| A3.3 | Building Sections | X | | | | |
| A3.4 | Wall Sections & Details | X | | | | |
| A3.5 | Wall Sections & Details | X | | | | |
| A3.6 | Wall Sections & Details | X | | | | |
| A3.7 | Wall Sections | X | | | | |
| A3.8 | Wall Sections | X | | | | |

EXHIBIT A

# SCHEDULE B - CONSTRUCTION DOCUMENTS

PROJECT:  THE LEGEND AT BROOMFIELD, BROOMFIELD, COLORADO                11/18/2016

CONTRACTOR:  THE LAW COMPANY, INC.

| SHEET NO. | SHEET TITLE | For Permit & Bidding | Bldg. Specs Revisions | CCD1, Delta 1 City/County Comments | CCD2, Delta 2 | NOTES |
|---|---|---|---|---|---|---|
| | | 9/16/16 | 10/24/16 | 10/31/16 | 11/18/16 | |
| A3.9 | Wall Sections | X | | | | |
| A3.10 | Wall Sections | X | | | | |
| A3.11 | Wall Sections & Details | X | | | | |
| A3.12 | Wall Sections & Details | X | | | | |
| A3.13 | Fire Rated Wall Details | X | | X | | |
| A4.0 | Roof Plan | X | | | | |
| A4.1 | Roof Details | X | | | | |
| A4.2 | Roof Details | X | | | | |
| A5.1 | Door Schedule | X | | X | | |
| A5.2 | Door Details | X | | | | |
| A5.3 | Door Details, Window Details, Finish Schedule | X | | | | |
| A5.4 | Window Types | X | | | | |
| A5.5 | Window Types | X | | | | |
| A5.6 | Window Details | X | | | | |
| A5.7 | Window Details | X | | | | |
| A5.8 | Window Details | X | | | | |
| A6.1 | Reflected Ceiling Plan | X | | | | |
| A6.2 | Reflected Ceiling Plan | X | | | | |
| A6.3 | Reflected Ceiling Plan | X | | | | |
| A6.4 | Reflected Ceiling Plan | X | | | | |
| A6.5 | Reflected Ceiling Plan | X | | | | |
| A6.6 | Reflected Ceiling Plan | X | | | | |
| A6.7 | Reflected Ceiling Plan | X | | | | |
| A6.8 | Reflected Ceiling Plan | X | | | | |
| A7.1 | Interior Elevations Units | X | | | | |
| A7.2 | Interior Elevations Units | X | | X | | |
| A7.3 | Interior Elevations - Units & Commons | X | | | | |
| A7.4 | Interior Elevations - Commons | X | | | | |
| A7.5 | Interior Elevations - Units & Commons | X | | | | |
| A8.1 | Casework Elevations | X | | | | |
| A8.2 | Casework Elevations | X | | | | |
| A8.3 | Casework Elevations | X | | | | |
| A8.4 | Casework Elevations | X | | | | |
| A8.5 | Casework Details | X | | | | Stamped 09/21/16 |
| A8.6 | Casework Details | X | | | | |
| A8.7 | Casework Details | X | | | | |
| A8.8 | Interior Details | X | | | | |
| A9.1 | Vertical Circulation | X | | | | |
| A9.2 | Vertical Circulation | X | | | | |
| A9.3 | Elevator Plans & Sections | X | | | | |
| A9.4 | Stair Details | X | | | | |
| A9.5 | Stair Details | X | | | | |
| | | | | | | |
| | | | | | | |

EXHIBIT A

# SCHEDULE B - CONSTRUCTION DOCUMENTS

PROJECT:  THE LEGEND AT BROOMFIELD, BROOMFIELD, COLORADO                    11/18/2016

CONTRACTOR:  THE LAW COMPANY, INC.

| SHEET NO. | SHEET TITLE | For Permit & Bidding | Bldg. Specs Revisions | CCD1, Delta 1 City/County Comments | CCD2, Delta 2 | NOTES |
|---|---|---|---|---|---|---|
| | | 9/16/16 | 10/24/16 | 10/31/16 | 11/18/16 | |
| | **MECHANICAL** | | | | | |
| MP0.1 | Mechanical Legend & General Notes | X | | | | |
| | | | | | | |
| M1.1 | First Floor - Southwest Area - HVAC Plan | X | | | X | |
| M1.2 | First Floor - Southeast Area - HVAC Plan | X | | | X | |
| M1.3 | First Floor - Northeast Area - HVAC Plan | X | | | X | |
| M1.4 | First Floor - Northwest Area - HVAC Plan | X | | | X | |
| M1.5 | Second Floor - Southwest Area - HVAC Plan | X | | | X | |
| M1.6 | Second Floor - Southeast Area - HVAC Plan | X | | | X | |
| M1.7 | Second Floor - Northeast Area - HVAC Plan | X | | | X | |
| M1.8 | Second Floor- Northwest Area - HVAC Plan | X | | | X | |
| M2.1 | Mechanical Details | X | | | | |
| M3.1 | Mechanical Schedules | X | | | | |
| M4.1 | Mechanical Details | X | | | | |
| M4.2 | Mechanical Details | X | | | | |
| M4.3 | Mechanical Details | X | | | | |
| M5.1 | Mechanical Schedules | X | | | X | |
| | | | | | | |
| | **PLUMBING** | | | | | |
| P1.1 | First Floor - Southwest Area - Waste & Vent Plan | X | | | X | |
| P1.2 | First Floor - Southeast Area - Waste & Vent Plan | X | | | X | |
| P1.3 | First Floor - Northeast Area - Waste & Vent Plan | X | | | X | |
| P1.4 | First Floor - Northwest Area - Waste & Vent Plan | X | | | X | |
| P1.5 | Second Floor - Southwest Area - Waste & Vent Plan | X | | | | |
| P1.6 | Second Floor - Southeast Area - Waste & Vent Plan | X | | | | |
| P1.7 | Second Floor - Northeast Area - Waste & Vent Plan | X | | | | |
| P1.8 | Second Floor - Northwest Area - Waste & Vent Plan | X | | | | |
| P2.1 | First Floor - Southwest Area - Plumbing Plan | X | | | | |
| P2.2 | First Floor - Southeast Area - Plumbing Plan | X | | | | |
| P2.3 | First Floor - Northeast Area - Plumbing Plan | X | | | | |
| P2.4 | First Floor - Northwest Area - Plumbing Plan | X | | | X | |
| P2.5 | Second Floor - Southwest Area- Plumbing Plan | X | | | X | |
| P2.6 | Second Floor - Southeast Area - Plumbing Plan | X | | | | |
| P2.7 | Second Floor - Northeast Area - Plumbing Plan | X | | | | |
| P2.8 | Second Floor - Northwest Area - Plumbing Plan | X | | | | |
| P3.1 | Enlarged Kitchen Waste/Vent & Plumbing Plans | X | | | X | |
| P4.1 | Plumbing Details | X | | | X | |
| P5.1 | Plumbing Schedules | X | | | X | |
| | | | | | | |
| | **ELECTRICAL** | | | | | |
| E1.0 | Electrical Site Details & Schedules | X | | | | |
| E1.0A | Transformer Pad Details | X | | | | |
| E1.0 B | Transformer Pad Details | X | | | | |
| E1.1 | Electrical Site Plan | X | | | | |

EXHIBIT A

## SCHEDULE B - CONSTRUCTION DOCUMENTS

**PROJECT:  THE LEGEND AT BROOMFIELD, BROOMFIELD, COLORADO**                                    11/18/2016

**CONTRACTOR:  THE LAW COMPANY, INC.**

| SHEET NO. | SHEET TITLE | For Permit & Bidding | Bldg. Specs Revisions | CCD1, Delta 1 City/County Comments | CCD2, Delta 2 | NOTES |
|---|---|---|---|---|---|---|
| | | 9/16/16 | 10/24/16 | 10/31/16 | 11/18/16 | |
| E1.1 A | Site Photometrics | X | | | | |
| E1.2 | Electrical Schedules & Details | X | | X | | |
| E1.3 | Electrical Distribution Diagram, Details & Schedules | X | | X | | |
| E1.4 | Equipment Connection Schedule | X | | | | |
| E1.5 | Distribution Panel Schedules | X | | | | |
| E1.6 | Panel Schedules | X | | | | |
| E1.7 | Panel Schedules | X | | | | |
| E1.8 | Panel Schedules | X | | | | |
| E1.9 | Panel Schedules | X | | | | |
| E1.9A | Panel Schedules | X | | | | |
| E1.10 | First Floor Power Distribution Equipment Plan | X | | | | |
| E1.11 | Second Floor Power Distribution Equipment Plan | X | | | | |
| E1.12 | Attic and Exterior Accent Lighting Plan | X | | | | |
| E2.1 | Enlarged First Floor Power Plan - Area 1 | X | | X | | |
| E2.2 | Enlarged First Floor Power Plan - Area 2 | X | | | | |
| E2.3 | Enlarged First Floor Power Plan - Area 3 | X | | | | |
| E2.4 | Enlarged First Floor Power Plan - Area 4 | X | | | | |
| E2.5 | Enlarged Second Floor Power Plan - Area 5 | X | | X | | |
| E2.6 | Enlarged Second Floor Power Plan - Area 6 | X | | | | |
| E2.7 | Enlarged Second Floor Power Plan - Area 7 | X | | X | | |
| E2.8 | Enlarged Second Floor Power Plan - Area 8 | X | | | | |
| E2.9 | Crawl Space Power & Lighting Plan | X | | | | Not on CVR Index |
| E3.1 | Enlarged First Floor Lighting Plan - Area 1 | X | | X | | |
| E3.2 | Enlarged First Floor Lighting Plan - Area 2 | X | | | | |
| E3.3 | Enlarged First Floor Lighting Plan - Area 3 | X | | X | | |
| E3.4 | Enlarged First Floor Lighting Plan - Area 4 | X | | | | |
| E3.5 | Enlarged Second Floor Lighting Plan - Area 5 | X | | | | |
| E3.6 | Enlarged Second Floor Lighting Plan - Area 6 | X | | | | |
| E3.7 | Enlarged Second Floor Lighting Plan - Area 7 | X | | | | |
| E3.8 | Enlarged Second Floor Lighting Plan - Area 8 | X | | | | |
| E4.1 | Enlarged Unit Electrical Rough In Plans | X | | | | |
| E4.2 | Enlarged Unit Electrical Rough In Plans | X | | | | |
| E4.3 | Enlarged Unit Electrical Rough In Plans | X | | | | |
| E4.4 | Enlarged Unit Electrical Rough In Plans | X | | | | |
| E4.5 | Enlarged Unit Electrical Rough In Plans | X | | | | |
| E4.6 | Enlarged Unit Electrical Rough In Plans | X | | | | |
| E4.7 | Enlarged Electrical Plans | X | | | | |
| E5.1 | First Floor Daylighting Control Plan - Area 1 | X | | | | |
| E5.2 | First Floor Daylighting Control Plan - Area 2 | X | | | | |
| E5.3 | First Floor Daylighting Control Plan - Area 3 | X | | | | |
| E5.4 | First Floor Daylighting Control Plan - Area 4 | X | | | | |
| E5.5 | Second Floor Daylighting Control Plan - Area 5 | X | | | | |
| E5.6 | Second Floor Daylighting Control Plan - Area 6 | X | | | | |
| E5.7 | Second Floor Daylighting Control Plan - Area 7 | X | | | | |

EXHIBIT A

# SCHEDULE B - CONSTRUCTION DOCUMENTS

PROJECT: THE LEGEND AT BROOMFIELD, BROOMFIELD, COLORADO                    11/18/2016

CONTRACTOR: THE LAW COMPANY, INC.

| SHEET NO. | SHEET TITLE | For Permit & Bidding | REVISION DATES | | | NOTES |
|---|---|---|---|---|---|---|
| | | | Bldg. Specs Revisions | CCD1, Delta 1 City/County Comments | CCD2, Delta 2 | |
| | | 9/16/16 | 10/24/16 | 10/31/16 | 11/18/16 | |
| E5.8 | Second Floor Daylighting Control Plan - Area 8 | X | | | | |
| | | | | | | |
| FS-1 | Enlarged Food Service | X | | | | |
| FS-2 | Enlarged Food Service | X | | | | Dated 09/12/16 |
| FS-3 | Enlarged Food Service | X | | | | |
| FS-4 | Food Service Details | X | | | | Dated 09/12/16 |
| | | | | | | |
| | LK ARCHITECTURE, INC. SPECIFICATIONS DATED 9/16/16 | | | | | |
| Division 1 - General Requirements | | | | | | |
| 01100 | Summary & Instructions | X | | | | |
| 01105 | Existing Condition Information | X | | | | |
| 01250 | Contract Modification Procedures | X | | | | |
| 01290 | Payment Procedures | X | | | | |
| 01310 | Project Management and Coordination | X | | | | |
| 01320 | Construction Progress Documentation | X | | | | |
| 01330 | Submittal Procedures | X | | | | |
| 01400 | Quality Requirements | X | | | | |
| 01420 | References | X | | | | |
| 01500 | Temporary Facilities and Controls | X | | | | |
| 01565 | Pollution Prevention and Control | X | | | | Spec Section 015656 |
| 01600 | Product Requirements | X | | | | |
| 01635 | Substitution Procedures | X | | | | |
| 01700 | Execution Requirements | X | | | | |
| 01715 | Fire Resistant Rated Assemblies Requirements | X | | | | |
| 01770 | Closeout Procedures | X | | | | |
| 01781 | Project Record Documents | X | | | | |
| 01782 | Operation and Maintenance Data | X | | | | |
| 01815 | Commissioning | X | | | | |
| 01820 | Demonstration and Training | X | | | | |
| Division 2 - Site Construction | | | | | | |
| 02230 | Site Clearing | X | | | | |
| 02300 | Earthwork | X | | | | |
| 02466 | Drilled Piers | X | | | | |
| 02763 | Pavement Markings | X | | | | |
| 02764 | Pavement Joint Sealants | X | | | | |
| 02826 | Ornamental Metal Fences and Gates | X | | | | |
| 02843 | Parking Bumpers | X | | | | |
| Division 3 - Concrete | | | | | | |
| 03310 | Building Cast-In-Place Concrete | X | | | | |
| 03315 | Concrete Void Form Systems | X | | | | |
| Division 4 - Masonry | | | | | | |
| 04710 | Adhered Manufactured Stone Veneer | X | | | | |
| 04720 | Cast Stone | X | | | | |
| Division 5 - Metals | | | | | | |

EXHIBIT A

## SCHEDULE B - CONSTRUCTION DOCUMENTS

PROJECT: THE LEGEND AT BROOMFIELD, BROOMFIELD, COLORADO                    11/18/2016

CONTRACTOR: THE LAW COMPANY, INC.

| SHEET NO. | SHEET TITLE | For Permit & Bidding | Bldg. Specs Revisions | CCD1, Delta 1 City/County Comments | CCD2, Delta 2 | NOTES |
|---|---|---|---|---|---|---|
| | | 9/16/16 | 10/24/16 | 10/31/16 | 11/18/16 | |
| 05120 | Structural Steel | X | | | | |
| 05210 | Steel Joists | X | | | | |
| 05310 | Steel Deck | X | | | | |
| 05400 | Cold-Formed Metal Framing | X | | | | |
| 05440 | Cold-Formed Metal Trusses | X | | | | |
| 05500 | Metal Fabrications | X | | | | |
| 05512 | Metal Pan Stairs | X | | | | |
| 05515 | Aluminum Ladders | X | | | | |
| Division 6 - Wood and Plastics | | | | | | |
| 06160 | Sheathing | X | | | | |
| 06202 | Interior Finish Carpentry | X | | | | |
| 06411 | Wood-Faced Architectural Cabinets | X | | | | |
| 06412 | Plastic-Laminate-Faced Architectural Cabinets | X | | | | |
| 06417 | Plastic-Laminate-Clad Countertops | X | | | | |
| 06615 | Solid Surface Sills & Countertops | X | | | | |
| 06640 | Fiber Reinforced Plastic Paneling | X | | | | |
| Division 7 - Thermal and Moisture Protection | | | | | | |
| 07210 | Building Insulation | X | | | | |
| 07272 | Fluid-Applied Membrane Air Barriers | X | | | | |
| 07311 | Asphalt Shingles | X | | | | |
| 07412 | Standing-Seam Metal Roof Panels | X | | | | |
| 07461 | Fiber Cement Siding | X | | | | |
| 07543 | Thermoplastic Polyolefin (TPO) Roofing | X | | | | |
| 07620 | Sheet Metal Flashing and Trim | X | | | | |
| 07812 | Intumescent Mastic Fireproofing | X | | | | |
| 07841 | Through-Penetration Firestop Systems | X | | | | |
| 07920 | Joint Sealants | X | | | | |
| Division 8 - Doors and Windows | | | | | | |
| 08110 | Hollow Metal Doors and Frames | X | | | | |
| 08115 | Steel Frames | X | | | | |
| 08212 | Wood Doors | X | | | | |
| 08215 | Molded Stile and Rail Doors | X | | | | |
| 08311 | Access Doors and Frames | X | | | | |
| 08349 | Automatic Overhead Coiling Fabric Fire Curtain | X | | | | |
| 08412 | Aluminum-Framed Storefronts | X | | | | |
| 08462 | Sliding Automatic Entrance Doors | X | | | | |
| 08561 | Vinyl Windows | X | | | | |
| 08710 | Door Hardware | X | | | | |
| 08711 | Door Hardware Schedule - DELETED | X | | | | Replaced with section 087111 |
| 087111 | Door Hardware Schedule | | X | | | |
| 08810 | Exterior Glazing | X | | | | |
| 08820 | Interior Glass & Mirrors | X | | | | |
| Division 9 - Finishes | | | | | | |
| 09010 | Interior Finishes Legend & Schedule | X | | | | |

EXHIBIT A

## SCHEDULE B - CONSTRUCTION DOCUMENTS

PROJECT:  THE LEGEND AT BROOMFIELD, BROOMFIELD, COLORADO                                            11/18/2016

CONTRACTOR:  THE LAW COMPANY, INC.

| SHEET NO. | SHEET TITLE | For Permit & Bidding | Bldg. Specs Revisions | CCD1, Delta 1 City/County Comments | CCD2, Delta 2 | NOTES |
|---|---|---|---|---|---|---|
| | | 9/16/16 | 10/24/16 | 10/31/16 | 11/18/16 | |
| 09111 | Non-Load-Bearing Steel Framing | X | | | | |
| 09225 | Portland Cement Plaster | X | | | | |
| 09250 | Gypsum Board | X | | | | |
| 09511 | Acoustical Panel Ceilings | X | | | | |
| 09852 | Sound-Absorbing Wall Units | X | | | | |
| 09900 | Painting | X | | | | |
| Division 10 - Specialties | | | | | | |
| 10305 | Manufactured Gas Fireplaces | X | | | | |
| 10520 | Fire Extinguishers and Cabinets | X | | | | |
| 10550 | Postal Specialties | X | | | | |
| 10672 | Wire Shelving | X | | | | |
| 10801 | Toilet and Bath Accessories | X | | | | |
| Division 11 - Equipment | | | | | | |
| 11400 | Kitchen Equipment | X | | | | |
| Division 12 - Furnishings | | | | | | |
| 12356 | Residential Casework | X | | | | |
| Division 13 - Special Construction | | | | | | |
| 13100 | Fire Protection | X | | | | |
| Division 14 - Conveying Systems | | | | | | |
| 14240 | Hydraulic Elevators | X | | | | |
| Division 15 - Mechanical | | | | | | |
| 15050 | Basic Mechanical Materials and Methods | X | | | | |
| 15060 | Hangers & Supports | X | | | | |
| 15075 | Mechanical Identification | X | | | | |
| 15081 | Duct Insulation | X | | | | |
| 15083 | Pipe Insulation | X | | | | |
| 15110 | Valves | X | | | | |
| 15122 | Meters and Gages | X | | | | |
| 15140 | Domestic Water Piping | X | | | | |
| 15150 | Sanitary Waste and Vent Piping | X | | | | |
| 15183 | Refrigerant Piping | X | | | | |
| 15185 | Hydronic Pumps | X | | | | |
| 15194 | Fuel Gas Piping | X | | | | |
| 15410 | Plumbing Fixtures | X | | | | |
| 15415 | Drinking Fountains and Water Coolers | X | | | | |
| 15430 | Plumbing Specialties | X | | | | Missing Section |
| 15486 | Fuel-Fired, Domestic Water Heaters | X | | | | |
| 15731 | Packaged Terminal Air Conditioners | X | | | | |
| 15733 | Replacement-Air Units | X | | | | |
| 15738 | Split-System Air-Conditioning Units | X | | | | |
| 15767 | Propeller Unit Heaters | X | | | | |
| 15815 | Metal Ducts | X | | | | |
| 15820 | Duct Accessories | X | | | | |
| 15838 | Power Ventilators | X | | | | |

EXHIBIT A

# SCHEDULE B - CONSTRUCTION DOCUMENTS

PROJECT:  THE LEGEND AT BROOMFIELD, BROOMFIELD, COLORADO          11/18/2016

CONTRACTOR:  THE LAW COMPANY, INC.

| SHEET NO. | SHEET TITLE | For Permit & Bidding | Bldg. Specs Revisions | CCD1, Delta 1 City/County Comments | CCD2, Delta 2 | NOTES |
|---|---|---|---|---|---|---|
| | | 9/16/16 | 10/24/16 | 10/31/16 | 11/18/16 | |
| 15855 | Diffusers, Registers, & Grilles | X | | | | Missing Section |
| 15990 | Testing, Adjusting, & Balancing | X | | | | |
| Division 16 - Electrical | | | | | | |
| 16050 | Basic Methods and Requirements | X | | | | |
| 16110 | Raceway Systems | X | | | | |
| 16120 | Wires and Cables, Low Voltage | X | | | | |
| 16140 | Wiring Devices | X | | | | |
| 16400 | Disconnect Switches | X | | | | |
| 16450 | Grounding | X | | | | |
| 16470 | Panelboards | X | | | | |
| 16481 | Motor Controllers | X | | | | |
| 16510 | Building Lighting | X | | | | |
| 16530 | Site Lighting | X | | | | |
| 16720 | Fire Alarm System | X | | | | |
| 16741 | Communications Systems | X | | | | |
| 16780 | Access Control Systems – DELETED | X | | | | Replaced with section 281311 |
| 281311 | Access Control Systems | | X | | | |
| | OTHER DOCUMENTS | | | | | |
| | Spec. Section 087111 Door Hardware | | X | | | Replaces section 08711 |
| | Spec. Section 281311 Access Control System | | X | | | Replaces section 16780 |
| | CCD1, Delta 1 City/County Comments | | | X | | |
| | CCD2, Delta 2 Revisions | | | | X | |
| | | | | | | |
| | | | | | | |

EXHIBIT A

Exhibit 2

EXHIBIT C

## BOND TO RELEASE MECHANICS' LIEN

Sections 38-22-131 through 38-22-133, Colorado Revised Statutes

Bond No. ___106856399___

NOTICE, That we, The Law Company, Inc., of 345 Riverview St., 3rd Floor, Wichita, KS 67203 as Principal, and Travelers Casualty and Surety Company of America of One Tower Square, Hartford, CT 06115, as Surety, are held and firmly bound unto CRC Construction Consulting, LLC, of PO Box 6005, Edmond, OK 73083 as Obligee, in the full and just sum of $1,049,191.00, being 150% of the amount of the Statement of Mechanics' Lien referenced below, plus $250 for costs incurred to date, for the payment of which well and truly to be made, we bind ourselves, our successors and assigns, jointly and severally, firmly by this Bond.

   WHEREAS, Obligee did file for record a Statement of Mechanics' Lien on 07/06/2018, against The Law Company, Inc., as Principal Contractor, and DEN ALF 1, LLC, as Owner(s), and said Statement of Mechanics' Lien was recorded at Reception No. 2018007404 in the records of the Clerk and Recorder of the County of Broomfield, State of Colorado, against the following described real property:

   PARCEL A:
   Lot 1, Mountain Terrace Filing No. 1 Final Plat – Replat A recorded August 29, 2014 at Reception No. 2014008265, City & County of Broomfield, State of Colorado

   PARCEL B:
   Non-exclusive easement for vehicular and pedestrian ingress and egress, utilities, as contained in Declaration of Access and Utility Easement and Maintenance Agreement recorded August 18, 2014 at Reception No. 2014007707, City & County of Broomfield, State of Colorado.

   Also known as: 12640 Lowell Boulevard, Broomfield, Colorado

   WHEREAS Principal desires to bond over said claim of lien as authorized by section 38-22-131 through 38-22-133, Colorado Revised Statutes;

   NOW THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH that if the lien claimant shall be finally adjudged to be entitled to recover upon the claim upon which his lien is based, the Principal or his Sureties shall pay to such claimant the amount of his judgment, together with any interest, costs, and other sums which such claimant would be entitled to recover upon the foreclosure of the lien.

   PROVIDED, HOWEVER, that liability under this bond shall not be cumulative and shall not exceed the bond amount regardless of the number of years the bond remains in force.

   SIGNED, SEALED AND DATED THIS 12th DAY OF ____July____, 2018.

Attest:                                        Principal: The Law Company, Inc.

By_____        By_____
Rosemary Rausch, Assistant Secretary           Marc Porter, Executive Vice President

                                               Surety: Travelers Casualty and Surety Company of America

                                               By:_____
                                               Desiree E. Westmoreland, Attorney-in-Fact

EXHIBIT C

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

# POWER OF ATTORNEY

**TRAVELERS**

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

Attorney-In Fact No.  230328

Certificate No. **006438594**

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Bret S. Burton, Tim H. Heffel, Desiree E. Westmoreland, David B. McKinney, Timothy Craig Smith, Ivey M. Beck, and Simon Kindel

of the City of ____Wichita____, State of ____Kansas____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this ____6th____ day of ____January____, 2016.

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the ____6th____ day of ____January____, 2016, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof,** I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2016.

_____
Marie C. Tetreault, Notary Public

58440-8-12 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

**EXHIBIT C**

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED**, that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED**, that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or understanding to which it is attached.

I, Kevin E. Hughes, the undersigned, Assistant Secretary, of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this 12th day of July, 2018

Kevin E. Hughes, Assistant Secretary



To verify the authenticity of this Power of Attorney, call 1-800-421-3880 or contact us at www.travelersbond.com. Please refer to the Attorney-In-Fact number, the above-named individuals and the details of the bond to which the power is attached.

**EXHIBIT C**

```
2018007404    LI   07/06/2018 03:27 PM
Page: 1 of 3  Rec Fee $23.00 Doc Fee $0.00
City and County of Broomfield
```

## STATEMENT OF MECHANIC'S LIEN
### Sections 38-22-101 through 38-22-133, Colorado Revised Statutes

In accordance with Sections 38-22-101 through 38-22-133, Colorado Revised Statutes, CRC Construction Consulting, LLC ("Lien Claimant") makes the following Statement of Lien:

1.    The name of the owner or reputed owners of the property to be affected by the lien are as follows: DEN ALF 1, LLC.

2.    The name and mailing address of the Lien Claimant are CRC Construction Consulting, LLC, P.O. Box 6005, Edmond, OK 73083. ☒ a subcontractor, ☐ a principal contractor.

3.    The name of the person who furnished the laborers or materials or performed the labor or services, or supplied the machinery, tools or equipment for which said lien is claimed is CRC Construction Consulting, LLC.

4.    The name of the principal contractor is The Law Company, Inc.

5.    The property to be affected by such lien is described as follows:

PARCEL A:
Lot 1, Mountain Terrace Filing No. 1 Final Plat - Replat A recorded August 29, 2014 at Reception No. 2014008265, City & County of Broomfield, State of Colorado

PARCEL B:
Non-exclusive easement for vehicular and pedestrian ingress and egress, utilities, as contained in Declaration of Access and Utility Easement and Maintenance Agreement recorded August 18, 2014 at Reception No. 2014007707, City & County of Broomfield, State of Colorado.

Also known as 12640 Lowell Blvd., Broomfield, Colorado.

6.    The Mechanics' Lien is held for and on account of labor, materials, services and equipment furnished for and to The Law Company, Inc.

7.    The amount of indebtedness due or owing the Lien Claimant for which said lien is claimed, for laborers or material furnished, labor and services performed, machinery, tools and equipment supplied is $699,294.00.* together with interest thereon at the legal rate.

*Note: This amount does not include $23,143 in retainage to be held pending final completion of project nor the value of certain work to be completed. Lien Claimant reserves the right to amend this Statement.

CRC Construction Consulting, LLC

By _____
    Casey Caldwell, President

STATE OF Oklahoma

COUNTY OF Oklahoma

I, Casey Caldwell, being of lawful age and being first duly sworn upon oath, do say that I am President (title) of CRC Construction Consulting, LLC, the Lien Claimant herein named; that I have read the within Statement of Mechanics' Lien and know the contents thereof; and that the same is true and correct, to the best of my knowledge, information and belief, and is made on behalf of the Lien Claimant.

_____  President
Name and Title

Subscribed and sworn to before me in Oklahoma County, State of Oklahoma, this 13 day of June, 2018.

Witness my hand and official seal.

_____
Notary Public
My commission expires: 09/02/19

No. 180A. Rev. 11-09. STATEMENT OF MECHANICS' LIEN WITH NOTICE OF INTENT TO FILE A LIEN STATEMENT AND AFFIDAVITS OF SERVICE (Page 1 of 3)

EXHIBIT B

### NOTICE OF INTENT TO FILE A LIEN STATEMENT

TO THE OWNER:

Take Notice that the Lien Claimant set forth on the Statement of Lien contained on the reverse of this Notice claims a Mechanics' Lien for laborers or material or equipment supplied to, or labor performed on, the project situated upon the real property described on said Statement of Mechanics' Lien, for the amount stated. If payment is not made within ten (10) days, the Lien Claimant intends to record said Statement of Mechanics' Lien in the County wherein the real property is located. This notice is given pursuant to Section 38-22-109(3), C.R.S.

Signature

Name: CRC Construction Consulting, LLC
P.O. Box 6005
Edmond, OK 73083
Type Name and Address of Claimant Above

### AFFIDAVIT OF SERVICE OR MAILING – OWNER

STATE OF Oklahoma

COUNTY OF Oklahoma

The undersigned, being of lawful age and being first duly sworn upon oath, deposes and says that this Notice of Intent to File a Lien Statement was mailed by fully prepaid certified mail, return receipt requested, to the last known address of the owner or reputed owner or his or her agent, as follows: DEN ALF 1, LLC, 8415 East 21st Street, Suite 100, Wichita, Kansas 67206 on this 13th day of June, 2018.

Subscribed and sworn to before me in the County of Oklahoma, State of Oklahoma this 13 day of June, 2018.

Witness my hand and official seal.

Notary Public
My commission expires: 09/02/19

No. 180A. Rev. 11-09. STATEMENT OF MECHANICS' LIEN WITH NOTICE OF INTENT TO FILE A LIEN STATEMENT AND AFFIDAVITS OF SERVICE (Page 2 of 3)

EXHIBIT B

**AFFIDAVIT OF SERVICE OR MAILING – CONTRACTOR**

STATE OF Oklahoma

COUNTY OF Oklahoma

The undersigned, being of lawful age and being first duly sworn upon oath, deposes and says that this Notice of Intent to File a Lien Statement was mailed by fully prepaid certified mail, return receipt requested, to the last known address of the principal or prime contractor or his or her agent, as follows: The Law Company, Inc. 345 Riverview, Wichita, KS 67203 on this _____ 13th day of June, 2018.

_Casy Caldwell_

Subscribed and sworn to before me in the County of Oklahoma State of Oklahoma this 13 day of June, 2018.

Witness my hand and official seal.

_____
Notary Public
My commission expires: 09/02/19


**AFFIDAVIT OF SERVICE OR MAILING PRIOR TO FILING LIEN STATEMENT**

STATE OF Oklahoma

COUNTY OF Oklahoma

The undersigned, being of lawful age and being first duly sworn, deposes and says that this Notice of Intent to File a Lien Statement was served pursuant to Section 38-22-109(3) C.R.S. as evidenced by the above Affidavits of Service or Mailing, at least ten (10) days before the time of filing the Lien Statement with the appropriate County Clerk and Recorder.

_Casy Caldwell_

Subscribed and sworn to before me in the _____ County of Oklahoma State of Oklahoma, this 5 day of July, 2018.

Witness my hand and official seal.

*Insert "City and" when applicable.
**Strike according to fact.

_____
Notary Public
My commission expires: 09/02/19


No. 180A. Rev. 11-09. STATEMENT OF MECHANICS' LIEN WITH NOTICE OF INTENT TO FILE A LIEN STATEMENT AND AFFIDAVITS OF SERVICE (Page 3 of 3)

EXHIBIT B

# THE AMERICAN INSTITUTE OF ARCHITECTS



Bond No. 106599289

*AIA Document A312*

# Payment Bond

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONTRACTOR (Name and Address):**

The Law Company, Inc.
P. O. Box 1139
Wichita, KS 67201

**OWNER (Name and Address):**

DEN ALF 1, LLC c/o Legend Senior Living
8415 East 21st Street, Suite 100
Wichita, KS 67206

**SURETY (Name and Principal Place of Business):**

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT 06183

**CONSTRUCTION CONTRACT**
Date: July 12, 2016
Amount: $16,115,000.00    Sixteen Million One Hundred Fifteen Thousand Dollars and 00/100
Description (Name and Location):The Legend at Broomfield, 12600 Lowell Blvd, Broomfield, CO 60020

**BOND**
Date (Not earlier than Construction Contract Date): November 2, 2016
Amount: 16,115,000.00    Sixteen Million One Hundred Fifteen Thousand Dollars and 00/100
Modifications to this Bond:      ☐ None                    ☒ See Page 6

**CONTRACTOR AS PRINCIPAL**
Company:                    (Corporate Seal)
The Law Company, Inc.

Signature:
Name and Title: Dennis Kerschen, President

(Any additional signatures appear on page 6)

**SURETY**
Company:                    (Corporate Seal)
Travelers Casualty and Surety Company of America

Signature:
Name and Title: Desiree E. Westmoreland
                         Attorney-in-Fact

| *(FOR INFORMATION ONLY - Name, Address and Telephone)* | OWNER'S REPRESENTATIVE *(Architect, Engineer or other party):* |
|---|---|
| AGENT or BROKER: | |
| IMA, Inc. | LK Architecture, Inc. |
| PO Box 2992 | 345 Riverview, Suite #200 |
| Wichita, KS 67201 | Wichita, KS 67203 |
| 316-266-6349 | |

EXHIBIT D

1  The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2  With respect to the Owner, this obligation shall be null and void if the Contractor:

2.1  Promptly makes payment, directly or indirectly, for all sums due Claimants, and

2.2  Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

3  With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4.  The Surety shall have no obligation to Claimants under this Bond until:

4.1  Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

4.2  Claimants who do not have a direct contract with the Contractor:

.1  Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

.2  Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

.3  Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5  If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

6  When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1  Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

6.2  Pay or arrange for payment of any undisputed amounts.

7  The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8  Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond.  By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

9  The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract.  The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10  The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11  No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs.  If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12  Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.  Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13  When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond

---

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

EXHIBIT D

conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

14 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

**15 DEFINITIONS**

15.1  Claimant:  An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

15.2  Construction  Contract:   The  agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

15.3  Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

**MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:**

Paragraph 6 above is deleted in its entirety and the following is substituted in its place:

6.  When the Claimant has satisfied the conditions of Paragraph 4, and has submitted all supporting documentation and any proof of claim requested by the Surety, the Surety shall, with reasonable promptness, notify the Claimant of the amounts that are undisputed and the basis for challenging any amounts that are disputed, including, but not limited to, the lack of substantiating documentation to support the claim as to entitlement or amount, and the Surety shall, with reasonable promptness, pay or make arrangements for payment of any undisputed amount; provided, however, that the failure of the Surety to timely discharge its obligations under this paragraph or to dispute or identify any specific defense to all or any part of a claim shall not be deemed to be an admission of liability by the Surety as to such claim or otherwise constitute a waiver of the Contractor's or Surety's defenses to, or right to dispute, such claim. Rather, the Claimant shall have the immediate right, without further notice, to bring suit against the Surety to enforce any remedy available to it under this Bond.

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |

Signature: _____     Signature: _____
Name and Title:     Name and Title:
Address:     Address:

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006          **A312-1984**     **6**
THIRD PRINTING • MARCH 1987

EXHIBIT D

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

## POWER OF ATTORNEY

 **TRAVELERS**

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

Attorney-In Fact No. 230328

Certificate No. 006786874

**KNOW ALL MEN BY THESE PRESENTS:** That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Bret S. Burton, Tim H. Heffel, Desiree E. Westmoreland, David B. McKinney, Timothy Craig Smith, Ivey M. Beck, and Simon Kindel

of the City of ___Wichita___, State of ___Kansas___, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this ___10th___ day of ___May___, 2016.

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the ___10th___ day of ___May___, 2016, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

In Witness Whereof, I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

EXHIBIT D

**WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER**

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED**, that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED**, that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached.

I, Kevin E. Hughes, the undersigned, Assistant Secretary, of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this **2nd** day of **November** 20 **16**.

Kevin E. Hughes, Assistant Secretary.

       

To verify the authenticity of this Power of Attorney, call 1-800-421-3880 or contact us at www.travelersbond.com. Please refer to the Attorney-In-Fact number, the above-named individuals and the details of the bond to which the power is attached.

**WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER**

EXHIBIT D

**MULTIPLE
OBLIGEE
RIDER**
(Concurrent Execution with
Payment and Performance
Bond)

**Travelers Casualty and Surety Company of America
Hartford, CT 06183**

This Rider is executed concurrently with and shall be attached to and forms a part of Performance and Payment Bonds No. 106599289 (hereinafter individually referred to as "Performance Bond" or "Payment Bond", and collectively referred to as "Bonds") issued by Travelers Casualty and Surety Company of America , (hereinafter referred to as "Surety"), as Surety, on the 2nd day of November , 2016 .

WHEREAS, on or about the 12th day of July , 2016 , The Law Company, Inc. (hereinafter called the "Principal"), entered into a written agreement with DEN ALFI, LLC c/o Legend Senior Living (hereinafter called the "Primary Obligee") for The Legend at Broomfield, 12600 Lowell Blvd, Broomfield, CO 80020 (hereinafter called the "Contract"); and

WHEREAS, Principal is required by the Contract to provide Bonds and Primary Obligee has requested that HCRI Tucson, Inc. and CrossFirst Bank, N.A. and Fidelity National Title Insurance Company be named as additional obligees under the Bonds; and

WHEREAS, Principal and Surety have agreed to execute and deliver this Rider in conjunction with the Bonds.

NOW, THEREFORE, the undersigned hereby agree and stipulate that HCRI Tucson, Inc. and CrossFirst Bank, N.A. and Fidelity National Title Insurance Company shall be added to the Bonds as named obligees (hereinafter referred to as "Additional Obligees"), subject to the conditions set forth below:

1. The Surety shall not be liable under the Bonds to the Primary Obligee, the Additional Obligees, or any of them, unless the Primary Obligee, the Additional Obligees, or any of them, shall make payments to the Principal (or in the case the Surety arranges for completion of the Contract, to the Surety) strictly in accordance with the terms of said Contract as to payments and shall perform all other obligations to be performed under said Contract at the time and in the manner therein set forth.

2. The aggregate liability of the Surety under the Performance Bond, to any or all of the obligees (Primary and Additional Obligees), as their interests may appear, is limited to the penal sum of the Performance Bond; the Additional Obligees' rights hereunder are subject to the same defenses Principal and/or Surety have against the Primary Obligee, and the total liability of the Surety shall in no event exceed the amount recoverable from the Principal by the Primary Obligee under the Contract. At the Surety's election, any payment due under the Performance Bond may be made by joint check payable to one or more of the obligees.

3. The aggregate liability of the Surety under the Payment Bond to any or all of the obligees (Primary and Additional Obligees), and to persons or entities that are entitled to make claim under the Payment Bond (hereinafter, "Claimants"), as their interests may appear, is limited to the penal sum of the Payment Bond; the Primary Obligee's and Additional Obligees' rights hereunder, if any, are subject to the same defenses Principal and/or Surety have against the Primary Obligee and/or the Claimants under the Payment Bond. At the Surety's election, any payment due under the Payment Bond may be made by joint check payable to one or more of the obligees and/or Claimants.

Except as herein modified, the Bonds shall be and remains in full force and effect.

Signed this 2nd day of November , 2016 .

The Law Company, Inc. (Principal)

By: _____

Dennis Kerschen, President

DEN ALFI, LLC c/o Legend Senior Living
(Primary Obligee)

By: _____

Travelers Casualty and Surety Company of America

By: _____

Desiree E. Westmoreland , Attorney-in-Fact

EXHIBIT D

2018008576   NOT   08/02/2018 01:41 PM
Page: 1 of 2  Rec Fee $18.00 Doc Fee $0.00
City and County of Broomfield

## NOTICE TO DISBURSER

### 38-22-126 C.R.S.

To:  Disbursers Name:  
      Address:

CrossFirst Bank  
9451 E. 13th Street N.  
Wichita, KS 67206

Pursuant to Paragraph 126, Article 22 of Title 38, Colorado Revised Statutes, notice is hereby given that the undersigned claims and will be entitled to a mechanic's lien for labor, services, machinery, tools, equipment or materials furnished for improvements on real estate.

1.  The land to be improved is situate in the City & County of Broomfield, State of Colorado and is described:

*Legal description*                                *Address:*

**Parcel A:**  
Lot 1, Mountain Terrace Filing No. 1 Final Plat-Replat A recorded August 29, 2014 at Reception No. 2014008265, City & County of Broomfield, State of Colorado.

12640 Lowell Blvd.  
Bromfield, Colorado

**Parcel B:**  
Non-exclusive easement for vehicular and pedestrian ingress and egress, utilities, as contained in Declaration of Access and Utility Easement and Maintenance Agreement recorded August 18, 2014 at Reception No. 2014007707, City & County of Broomfield, State of Colorado.

12640 Lowell Blvd.  
Bromfield, Colorado

2.  The name, address and telephone number of the claimant are:

| *Name:* | *Address:* | *Telephone:* |
|---|---|---|
| CRC Construction Consulting, LLC | P.O. Box 6005 Edmond, OK 73083 | 405-496-3610 |
|  | 11905 Whitney Way Oklahoma City, OK 73131 |  |

3.  Name, address and telephone number of person with whom claimant has contracted:

| *Name:* | *Address:* | *Telephone:* |
|---|---|---|
| The Law Company, Inc. | 345 Riverview Wichita, KS 67203 | 316-268-0200 |

4.  A general statement or the contract of the claimant is: Materials were supplied and labor furnished for use in the construction of improvements on the above-described real property for which the claimant was not paid.

5.  The amount requested by the claimant is: $699,294*

*Note: This amount does not include $23,143 in retainage to be held pending final completion of project nor the value of certain work to be completed. Claimant reserves the right to amend this Notice.

Claimant Name:

By      _Casey Caldwell_

Casey Caldwell – President  
CRC Construction Consulting, LLC  
P.O. Box 6005  
Edmond, OK 73083

**EXHIBIT E**

2018008576   NOT   08/02/2018 01:41 PM
Page: 2 of 2  Rec Fee $18.00 Doc Fee $0.00
City and County of Broomfield

Disburser hereby acknowledges due service of this notice on this _____ day of June, 2018.

_____
                                        Disburser

By _____

After acknowledgment, Disburser shall return a copy to the Claimant.

STATE OF _Oklahoma_

COUNTY OF _Oklahoma_

_Casey Caldwell_, of lawful age, being first duly sworn upon oath, deposes and says that he/she made due service of this notice on the disburser by

(X)   mailing by certified mail a copy of this notice addressed to the disburser at the address stated in the notice.

(  )   delivering a copy of this notice to the disburser in person.

(  )   leaving a copy of this notice at the (residence) (place or business) of the disburser with the person in charge, to with _____

By _____

Subscribed and sworn to before me on this _13_ day of June, 2018.

My Commission expires on:

Witness my hand and official seal.

EXHIBIT E